Lorraine **YANCOSKI**

v.

**E.F. HUTTON & COMPANY, INC. and Herbert Krakovitz.**

**Civ. A. No. 82–4743.**

United States District Court, E.D. Pennsylvania.

Sept. 23, 1983.

David B. Zlotnick, Richard D. Greenfield, Greenfield & Chimicles, Bala Cynwyd, Pa., for plaintiff.

Daniel E. Bacine, Leonard Barrack, Barrack, Rodos & Bacine, Philadelphia, Pa., for defendants.

## MEMORANDUM

HANNUM, District Judge.

This is an action brought by Plaintiff Yancoski to recover damages based on allegations of fraud relating to transactions in securities. The Complaint sets forth ten counts. The Court will rule on the Motion Of Defendants To Dismiss The Complaint[1] in which defendants seek dismissal, on various grounds, of all counts.

### Summary Of Allegations

■ The allegations of the Complaint must be accepted as being true.[2] Accordingly, a distillation of the allegations is presented below.

Lorraine Yancoski received a large sum of money in July of 1979 by means of the satisfaction of a judgment in her favor based on her husband's death. Yancoski sought prudent and safe investments for her funds in order to provide income and capital growth potential.

At her request, plaintiff's attorney introduced her to some stockbrokers, including defendant Krakovitz. Krakovitz worked for the brokerage house of E.F. Hutton & Company, Inc., [hereinafter referred to as "E.F. Hutton"]. Plaintiff was told by Krakovitz that he could invest her money in a manner that was both safe and would lead to income and capital growth. Krakovitz emphasized that the vast research and informational resources of E.F. Hutton would be used to guide her investments.

Based on Krakovitz's statements, plaintiff opened a discretionary account at E.F. Hutton with Krakovitz as the broker in charge of the account. Yancoski placed $100,000.00, the vast majority of her assets, in the account. Before opening her account with E.F. Hutton, plaintiff had not traded in securities and informed Krakovitz of her lack of knowledge of the stock market.

Although plaintiff's objective of safe and prudent investments was known to him, Krakovitz immediately began purchasing stocks for the account which were highly speculative. Krakovitz represented to plaintiff that the stocks purchased for the account were cautious and safe investments. During late 1979 and early 1980, Krakovitz engaged the account in a large amount of trading. In December, 1979 and January, 1980, trading totals were close to the entire value of the account.

In February of 1980, Krakovitz persuaded Yancoski to convert to a margin account by misrepresenting the risks of margin accounts and the suitability of a margin account to plaintiff's investment objectives. Krakovitz is alleged to have induced the conversion to a margin account and subsequently to have used the account solely for the purpose of generating commissions and not to serve Yancoski's interest. The Complaint sets forth a sequence of heavy trading through which the bulk of the account's value was lost while payments for commissions and interest on indebtedness to E.F. Hutton grew.

Plaintiff eventually closed her account with E.F. Hutton and sought relief in this Court based on the heavy trading and misrepresentation by Krakovitz and a failure to supervise the account by E.F. Hutton.

### Count I: The Securities Exchange Act Section 10(b) and Rule 10b–5

Plaintiff's first count alleges violations of Section 10(b) of the Securities Exchange

---

1. Docket Entry No. 15.

2. For the purposes of ruling on defendants' motion, which is based in part on FED.R.CIV.P. 12(b)(6) (failure to state a claim upon which relief can be granted), the Court must accept the allegations of the complaint as being true. *See Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957).

Act of 1934, 15 U.S.C. § 78j(b),[3] and the Securities and Exchange Commission's Rule 10b–5, 17 C.F.R. § 240.10b–5 (1982).[4] In effect, Count I of the Complaint sets forth two challenged theories of liability:[5] (1) Krakovitz violated Rule 10b–5 by engaging the account in excessive trading for the purpose of generating commissions or, in other words, that Krakovitz "churned" the account; and (2) Krakovitz violated Rule 10b–5 by making material misrepresentations concerning and omitting to state material facts regarding the securities transactions.

█ Defendants properly recognize that Count I complains of "churning"[6] the account. Defendants contend, however, that churning is not a cognizable violation of either the Act or Rule 10b–5. Instead, maintain Krakovitz and E.F. Hutton, the churning of the account represents a mere breach of a fiduciary relationship and not a manipulative or deceptive act proscribed by federal law.

If churning constitutes only a breach of fiduciary relations, then federal securities law does not cover the activity. *See Santa Fe Industries, Inc. v. Green*, 430 U.S. 462, 476, 97 S.Ct. 1292, 1302, 51 L.Ed.2d 480 (1977). Churning is, however, more than defendants claim. The cases recognize churning as a deceptive practice which constitutes a violation of Section 10(b) of the Act and Rule 10b–5. *E.g., Carras v. Burns*, 516 F.2d 251, 258 (4th Cir.1975) (collecting cases); *McNeal v. Paine, Webber, Jackson & Curtis, Inc.*, 598 F.2d 888, 890 n. 1 (5th Cir.1979) (collecting cases). *Cf.* 17 C.F.R. § 240.15c1–7 (1982) (expressly defining churning as a violation of Section 15(c) of the Act).

Contrary to defendants' contentions, under the circumstances of this case, plaintiff is not required to allege misrepresentations in addition to the excessive trading in order to state a claim under Rule 10b–5.[7] There-

---

**3.** Section 10(b) of the Securities Exchange Act of 1934 reads as follows:

It shall be unlawful for any person, directly or indirectly, by use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange—

* * * * * *

(b) to use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the [Securities and Exchange] Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

15 U.S.C. § 78j(b).

**4.** Rule 10b–5 reads as follows:

It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,

(a) to employ any device, scheme, or artifice to defraud,

(b) to make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

(c) to engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in

connection with the purchase or sale of any security.

17 C.F.R. § 240.10b–5 (1982).

**5.** Although neither creates a private right of action for violations,

a private right of action under Section 10(b) of the 1934 Act and Rule 10b–5 has been consistently recognized for more than 35 years. The existence of this implied remedy is simply beyond peradventure.

*Herman & MacLean v. Huddleston*, —— U.S. ——, ——, 103 S.Ct. 683, 687, 74 L.Ed.2d 548 (1983) (note omitted).

**6.** Churning occurs when a broker, exercising control over the volume and frequency of trading, abuses his customer's confidence for personal gain by initiating transactions that are excessive in view of the character of the account. Its hallmarks are disproportionate turnover, frequent in and out trading, and large brokerage commissions.

*Carras v. Burns*, 516 F.2d 251, 258 (4th Cir. 1975).

**7.** When a securities broker engages in excessive trading in disregard of his customer's investment objectives for the purpose of generating commission business, the customer may hold the broker liable for churning in violation of Rule 10b–5. *Hecht v. Harris Upham & Company*, 430 F.2d 1202 (9th Cir. 1970). In order to establish a claim of churning, a plaintiff must show (1) that the trading in his account was excessive in light of his

fore, this Court finds that the Complaint does state a claim based on churning.

■ Defendants also challenge Count I on the ground that it fails to state a claim based solely on misrepresentations by Krakovitz. It is asserted by defendants that plaintiff fails to allege any misrepresentations and, even if misrepresentations are alleged, that there were no misrepresentations made in connection with the purchase or sale of a security. On both grounds, the Court finds defendants' contentions to be without merit.

As the factual background provided earlier indicates, Krakovitz allegedly made several misrepresentations to Yancoski. "Krakovitz represented that he could invest her money in a manner that was completely safe but that would provide income and lead to significant capital appreciation." Complaint at ¶ 11. After purchasing highly speculative stocks for her account, Krakovitz continued to tell Yancoski that only safe and prudent investments were being made. Complaint at ¶ 15. Yancoski was also told that the high volume of trading in her account was normal. Complaint at ¶ 17. When he induced the conversion of the account to a margin account, Krakovitz purportedly misrepresented the risks and appropriateness of the margin-type account. Complaint at ¶ 18. There are other allegations which may be construed as charging misrepresentations, but the Court finds those already stated suffice to demonstrate the propriety of its ruling.

Additionally, the misrepresentations are alleged to be in connection with the purchase or sale of a security. Some misrepresentations were made both before and after the opening of the accounts regarding the prudence of the investments. This Court views those representations as ones "touching" the purchase or sale of securities and, therefore, the "in connection with" requirement is satisfied by the Complaint. *See Superintendent of Ins. v. Bankers Life and Cas. Co.*, 404 U.S. 6, 13, 92 S.Ct. 165, 169, 30 L.Ed.2d 128 (1971); *Arrington v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 651 F.2d 615, 619 (9th Cir.1981).

As a result of the foregoing analysis, this Court finds that Count I of the Complaint survives the motion to dismiss.

### Count II: Section 12(2) Of The Securities Act

Plaintiff's second count alleges a cause of action under Section 12(2) of the Securities Act of 1933, 15 U.S.C. § 77l(2).[8] Count II charges misrepresentations by Krakovitz and E.F. Hutton as sellers of securities.

investment objectives; (2) that the broker in question exercised control over the trading in the account; and (3) that the broker acted with the intent to defraud or with the wilful and reckless disregard for the interests of his client. *Rolf v. Blyth, Eastman, Dillon & Company, Inc.*, 424 F.Supp. 1021, 1039–1040 (S.D. N.Y.1977) *aff'd* at 570 F.2d 38 ([2nd Cir.] 1978), *cert. denied*, 439 U.S. 1039, 99 S.Ct. 642, 58 L.Ed.2d 698 (1978).

*Mihara v. Dean Witter & Co., Inc.*, 619 F.2d 814, 820–21 (9th Cir.1980) (note omitted). *Accord Miley v. Oppenheimer & Co., Inc.*, 637 F.2d 318, 324 (5th Cir., Unit A 1981). *See Zaretsky v. E.F. Hutton & Co., Inc.*, 509 F.Supp. 68, 74 (S.D.N.Y. 1981).

8. Section 12(2) reads as follows:

Any person who—

\*    \*    \*    \*    \*    \*

(2) offers or sells a security (whether or not exempted by the provisions of section 77c of this title, other than paragraph (2) of subsection (a) of said section), by the use of any means or instruments of transportation or communication in interstate commerce or of the mails, by means of a prospectus or oral communication, which includes an untrue statement of a material fact or omits to state a material fact necessary in order to make the statements, in the light of the circumstances under which they were made, not misleading (the purchaser not knowing of such untruth or omission), and who shall not sustain the burden of proof that he did not know, and in the exercise of reasonable care could not have known, of such untruth or omission,

shall be liable to the person purchasing such security from him, who may sue either at law or in equity in any court of competent jurisdiction, to recover the consideration paid for such security with interest thereon, less the amount of any income received thereon, upon the tender of such security, or for damages if he no longer owns the security.

15 U.S.C. § 77l(2).

■ Because matters outside the pleadings were introduced by the parties on this portion of defendants' motion to dismiss pursuant to FED.R.CIV.P. 12(b)(6), the Court will treat the challenge to Count II as a motion for summary judgment.[9] In this situation, the Court must still accept all of plaintiff's allegations as true and grant judgment only if no genuine issue of material fact is present. *Mortensen v. First Federal Sav. & Loan Ass'n,* 549 F.2d 884, 891 (3d Cir.1977).

For the purposes of its ruling, the Court will accept defendants' assertion that an action under Section 12(2) will lie only against the purchaser's immediate seller. *See Memorandum Of Law In Support Of Defendants' Motion To Dismiss The Complaint,* at 10–13.[10]

■ Plaintiff has submitted to the Court several confirmation slips sent to Yancoski by defendants. The confirmation slips carry a designation under "Code C" of "2." *See Plaintiff's Memorandum In Opposition To Defendants' Motion To Dismiss,* Exhibit A.[11] The reverse side of the confirmation slips explain the entry of "2" in this manner: "AS PRINCIPAL WE HAVE BOUGHT FROM YOU OR SOLD TO YOU FOR YOUR ACCOUNT." Additionally, at oral argument on this motion, defendants' counsel conceded that E.F. Hutton was the immediate seller in some of the transactions for the Yancoski account.[12] Consequently, defendants are not entitled to judgment as a matter of law and the motion for summary judgment on Count II is denied.[13]

### Count III: "Controlling" Liability Of E.F. Hutton

■ Plaintiff's third count consists of claims under 15 U.S.C. § 77o [14] and 15 U.S.C. § 78t(a).[15] Both sections provide for

9. If, on a motion asserting the defense numbered (6) to dismiss for failure to the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56. FED.R.CIV.P. 12(b).

10. Docket Entry No. 15.

11. Docket Entry No. 17.

12. The following is a short excerpt from the oral argument. Mr. Bacine argued the motion for defendants.

THE COURT: You did answer the question that I asked you with respect to the plaintiff's view that this contention is met by the plaintiff who has attached confirmation slips proving that E.F. Hutton sold stock which it owned as principal to the plaintiff, and you responded on that.

MR. BACINE: Yes.

I—I think we have to concede that, in fact, with regard to those transactions there was—a direct purchase and sale, so that to the—to the extent that the complaint alleges a claim under 12(2) and to the extent that there were— there was privy [sic] between the broker and the customer, I think that that prong of the 12(2) requirement is indeed met.

*Transcript of Oral Argument on Defendants' Motion To Dismiss,* Docket Entry No. 27, at 2–3.

13. The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. FED.R.CIV.P. 56(c).

14. 15 U.S.C. § 77o reads as follows:

Every person who, by or through stock ownership, agency, or otherwise, or who, pursuant to or in connection with an agreement or understanding with one or more other persons by or through stock ownership, agency, or otherwise, controls any person liable under sections 77k or 77l of this title, shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable, unless the controlling person had no knowledge of or reasonable ground to believe in the existence of the facts by reason of which the liability of the controlled person is alleged to exist.

15. 15 U.S.C. § 78t(a) reads as follows:

(a) Every person who, directly or indirectly, controls any person liable under any provision of this chapter or of any rule or regulation thereunder shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable, unless the controlling person acted in good faith and did not directly or indirectly induce the act or

joint and several liability of a "controlling person" for violations of the securities laws by a "controlled person."

Defendants assert that Count III fails to state a claim for "controlling person" liability against E.F. Hutton on the basis that no claim for the underlying liability of Krakovitz has been stated. As a result of the Court's disposition of the earlier counts, defendants' position becomes untenable. Accordingly, defendants' motion to dismiss Count III of the Complaint is denied.

### Count IV: Civil Liability Under RICO

Plaintiff's fourth count asserts a claim for treble damages under the civil liability provisions of the Racketeer Influenced and Corrupt Organizations Act,[16] [hereinafter referred to as "RICO"]. This claim rests on the same set of facts which form the basis of the securities law counts and is asserted against both Krakovitz and E.F. Hutton.

RICO declares:

(c) It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

(d) It shall be unlawful for any person to conspire to violate any of the provisions of subsections (a), (b), or (c) of this section.

18 U.S.C. § 1962(c), (d).

Yancoski alleges violation of both subsections quoted above. In particular, the Complaint contends that Krakovitz, an employee of E.F. Hutton, and E.F. Hutton did "conduct or participate, . . . , in the conduct" of E.F. Hutton's affairs through a "pattern

of racketeering activity," and that both defendants conspired to violate section 1962(c). Plaintiff claims that the requisite "pattern of racketeering activity," see 18 U.S.C. § 1961(1), (5), was comprised by numerous acts of mail fraud and wire fraud. Also the Complaint expressly alleges the charged acts of securities fraud as a pattern since multiple acts of fraud in securities transactions can constitute the pattern of activity needed for a RICO claim. See 18 U.S.C. § 1961(1).

Plaintiff's RICO claim presents this Court with several questions regarding the construction of the statute. First, the Court must determine if the injury alleged by Yancoski is redressed by RICO's civil provision. Second, the Court must decide whether E.F. Hutton can violate 18 U.S.C. § 1962(c) by participating in its own affairs. Finally, it must be resolved whether a claim for conspiracy to violate the interdicts of RICO can be stated under the facts of this case.

### 1. —Is The Injury Within Civil RICO?

Yancoski alleges a loss of personal funds through the activities of defendants. Defendants maintain that the Complaint fails to allege the needed pattern of racketeering and that, even if a pattern was alleged, the loss suffered by Yancoski is not within the purview of RICO.

Due to the earlier resolutions of Counts I and II, it becomes clear that a pattern of racketeering has been pleaded. In the earlier counts, plaintiff states claims for several acts of fraud in the sale of securities. RICO only requires two acts of racketeering activity within ten years to establish a pattern, see 18 U.S.C. § 1961(5), and fraud in the sale of securities qualifies as racketeering activity, see 18 U.S.C.

---

acts constituting the violation or cause of action.

**16.** 18 U.S.C. §§ 1961–68. The civil liability provisions of the law provide for the recovery of treble damages by persons injured by violations of the Act. 18 U.S.C. § 1964(c).

Any person injured in his business or property by reason of a violation of section 1962

of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee.

Id.

§ 1961(1). The third count of the Complaint incorporates all prior allegations and then proceeds to allege the pattern of racketeering, based on the earlier counts, expressly. Consequently, defendants' contention that a pattern is not pleaded is futile.

A more substantial question is raised by the nature of the injury required to state a civil RICO claim. Federal courts have expressed divergent opinions on this issue. The kernel of the debate is whether the federal courts should import a standing requirement into RICO in order to prevent the federalization of a large body of state law fraud.

Some courts have refused to impose any standing requirement on the civil RICO claimant. *See, e.g., Bennett v. Berg*, 685 F.2d 1053, 1059 (8th Cir.1982), *aff'd on rehearing en banc* 710 F.2d 1361 (8th Cir. 1983); *Eisenberg v. Gagnon*, 564 F.Supp. 1347 at 1352 (E.D.Pa.1983); *Kimmel v. Peterson*, 565 F.Supp. 476, 493–95 (E.D.Pa. 1983). Other courts have insisted that the plaintiff must show a competitive injury, analogous to that needed to state an antitrust claim, in order to satisfy RICO. *See, e.g., Van Schaick v. Church of Scientology*, 535 F.Supp. 1125, 1137 (D.Mass.1982); *North Barrington Dev., Inc. v. Fanslow*, 547 F.Supp. 207, 210–11 (N.D.Ill.1980). Still other courts have purportedly eschewed the competitive injury requirement while demanding that the RICO claimant show a racketeering injury. *Smith v. Nationwide Mutual Fire Ins. Co.*, 564 F.Supp. 350, 358 (N.D.Fla.1983); *Harper v. New Japan Securities International, Inc.*, 545 F.Supp. 1002, 1007–08 (C.D.Cal.1982); *Landmark Savings & Loan v. Loeb Rhoades, Hornblower & Co.*, 527 F.Supp. 206, 208 (E.D.Mich.1981). All of these cases arrive at their respective results by interpreting the same statutory language: "Any person injured in his *business or property by reason of* a violation of section 1962 of this chapter [proscribing cer-

tain activities involving racketeering,] may sue therefor...." 18 U.S.C. § 1964(c) (emphasis added).

RICO was originally designed and drafted in the image of the federal antitrust laws. Blakely, *The RICO Civil Fraud Action in Context: Reflections on Bennett v. Berg*, 58 Notre Dame L.Rev. 237, 249–56 (1982). In fact, some of RICO's predecessor bills were drafted as amendments to the Sherman Act. The Antitrust Section of The American Bar Association submitted a report to Congress commenting on the propriety of using the antitrust laws to combat organized crime—the objective of RICO. *See* 115 Cong.Rec. 6994–95 (1969). Based on the concerns that private litigants would have to contend with the concepts of "standing" and "proximate cause" developed under the antitrust laws, the report recommended, "that any such legislation be enacted as an independent statute and not be included in the Sherman Act, or any other antitrust law." *Id.* at 6995. Congress heeded the report's warning and RICO was enacted as a separate statute.

As a result of its consideration of the legislative history of RICO,[17] this Court concurs in the conclusion of Professor Blakely that "any suggestion that RICO actions be limited by antitrust-type limitations—'competitive,' 'commercial,' or 'direct/indirect' injuries—flies in the face of the very consideration that led to the drafting of RICO as a separate statute from the antitrust statutes that are so limited." Blakely, *The RICO Civil Fraud Action in Context: Reflections on Bennett v. Berg*, 58 Notre Dame L.Rev. 237, 255 (1982). Consequently, this Court will not require a showing of competitive injury before a claim under 18 U.S.C. § 1964(c) can be stated.

Whether some middle ground between no standing requirement and an antitrust standing requirement should be used in

---

**17.** While RICO's meaning is plain on its face and no resort to the legislative history is required for its proper interpretation, *United States v. Vignola,* 464 F.Supp. 1091, 1096 (E.D. Pa.1979), *aff'd without opinion,* 605 F.2d 1199

(3d Cir.1979), *cert. denied,* 444 U.S. 1072, 100 S.Ct. 1015, 62 L.Ed.2d 753 (1980), the Court consults the legislative history for background purposes.

civil RICO cases is best addressed by considering the purpose of RICO.

> It is the purpose of this Act to seek the eradication of organized crime in the United States by strengthening the legal tools in the evidence-gathering process, by establishing new penal prohibitions, *and by providing enhanced sanctions and new remedies* to deal with the unlawful activities of those engaged in organized crime.

Pub.L. 91–452, § 1 (1970) (emphasis added). Additionally, the Court heeds the Congressional exhortation that "[t]he provisions of this title shall be liberally construed to effectuate its remedial purposes." *Id.* at § 904.

■■■■ RICO's provisions are aimed at behavior that is characteristic of organized crime, but its applicability extends beyond persons who can be shown to be involved in organized crime. *See United States v. Cauble,* 706 F.2d 1322, 1330 & n. 7 (5th Cir.1983). The Act seeks to protect interstate and foreign commerce from activities that are characteristic of organized crime even when they are engaged in by a single individual. *United States v. Aleman,* 609 F.2d 298, 303 (7th Cir.1979), *cert. denied,* 445 U.S. 946, 100 S.Ct. 1345, 63 L.Ed.2d 780 (1980).[18] Its civil and criminal provisions, therefore, seek to protect both "innocent investors and competing organizations." Pub.L. 91–452, § 1 (1970).

These courts which have imposed a requirement of racketeering injury have done so in order to prevent federalization of state law fraud. First, this concern is unwarranted because RICO addresses only offenses which have an effect on interstate or foreign commerce. Second, the requirement of showing racketeering-type injury is meaningless in light of the manner in which the statute was drafted.[19] The statute provides its own standing requirement for civil plaintiffs in 18 U.S.C. § 1964(c).

■■■ RICO provides a civil action only to persons "injured in [their] business or property by reason of a violation of section 1962 ...." Section 1962(c), upon which plaintiff predicates liability, requires that a "pattern of racketeering" be involved. The pattern can only be established by the commission of two or more of the predicate acts of racketeering activity listed in 18 U.S.C. § 1961(1). The requirement of injury by reason of a violation of section 1962 should therefore be read as simply requiring that the plaintiff was injured by at least two acts of racketeering activity—a pattern—charged to the defendant. This interpretation provides a meaningful standing requirement by preventing an individual who was injured by one act of the type listed in 18 U.S.C. § 1961(1) from making out a RICO claim by alleging other unrelated acts of racketeering activity committed by the same defendant.

---

**18.** The major thrust of the 1970 Act is to rid the American economy and channels of interstate commerce from the influences of "organized crime." Congress has chosen to accomplish this objective not by proscribing the elusive status of "organized crime," but by prohibiting certain behavior, ..., which it has concluded is commonly engaged in by members of "organized crime." This does not mean, however, that Congress intended the 1970 Act to apply *exclusively* to members of "organized crime," .... *United States v. Vignola,* 464 F.Supp. 1091, 1095–1096 (E.D.Pa.1979), *aff'd without opinion,* 605 F.2d 1199 (3d Cir.1979), *cert. denied,* 444 U.S. 1072, 100 S.Ct. 1015, 62 L.Ed.2d 753 (1980). Although *Vignola* and *Aleman* are criminal cases, their conclusions are equally apposite to civil RICO suits. *See Eaby v. Richmond,* 561 F.Supp. 131, 134 (E.D.Pa.1983).

**19.** This Court has previously noted that the cases requiring "something more than an injury stemming from racketeering activity" have failed to give any clear indication of what constitutes "something more." *Eisenberg v. Gagnon,* 564 F.Supp. 1347 at 1352 (E.D.Pa.1983). Essentially, the "something more" requirement simply provides a vehicle for the dismissal of cases which, although they are within the parameters of RICO, fail to satisfy the judicial mind as to their substantiality. Congress decided the scope of RICO; the judicial role is one of application and interpretation and not one of restrictive policy-making. *D'Iorio v. Adonizio,* 554 F.Supp. 222, 231 (M.D.Pa.1982); Note, *Civil RICO—The Temptations and Impropriety of Judicial Restrictions,* 95 Harv.L.Rev. 1101, 1121 (1982).

By construing the statute in this manner, the Court gives recognition and effect to the fact that "Congress deliberately redrafted RICO outside of the antitrust statutes, so that it would *not* be limited by antitrust concepts like 'competitive,' 'commercial,' or 'direct or indirect' injury;" and *"[b]oth* immediate victims of racketeering activity *and* competing organizations were contemplated as civil plaintiffs for injunction, damage *and* other relief,...." Blakely, *The RICO Civil Fraud Action In Context, Reflections on Bennett v. Berg,* 58 Notre Dame L.Rev. 237, 280 (1982). Under the allegations of the Complaint, plaintiff has met the standing requirement just stated and, therefore, defendants' contentions on this ground are dismissed.

### 2. Can Hutton Be Both "Person" and "Enterprise" Under Section 1962(c)?

[13] Plaintiff claims E.F. Hutton violated 18 U.S.C. § 1962(c) through the events alleged. Section 1962(c) prohibits "a person employed by or associated with any enterprise engaged in, ..., interstate or foreign commerce," from participating in the enterprise's activities through racketeering. 18 U.S.C. § 1962(c). While E.F. Hutton is an entity capable of fitting the statutory definition of either "person" or "enterprise," 18 U.S.C. § 1961(3), (4), in any given situation, it may not be used in the same case to fit both. *United States v. Computer Sciences Corp.,* 689 F.2d 1181, 1190 (4th Cir.1982), *cert. denied* — U.S. ——, 103 S.Ct. 729, 74 L.Ed.2d 953 (1983).

"RICO quite clearly envisions a relationship between a 'person' and an 'enterprise' as an element of the offense which 1962(c) proscribes and for which 1964(c) would subject the 'person' to treble damages." *Van Schaick v. Church of Scientology,* 535 F.Supp. 1125, 1135–36 (D.Mass.1982). In this case, the Court concludes that the only

possible relationship of person and enterprise possible is the one where Krakovitz is the person and E.F. Hutton is the enterprise. Since the enterprise cannot be liable to the plaintiff in a civil RICO claim predicated on a violation of 18 U.S.C. § 1962(c), *Parnes v. Heinold Commodities, Inc.,* 548 F.Supp. 20, 23–24 (N.D.Ill.1982); *Van Schaick,* 535 F.Supp. at 1135–36; *see United States v. Computer Sciences Corp.,* 689 F.2d at 1190, plaintiff fails to state a civil RICO claim against E.F. Hutton based on 18 U.S.C. § 1962(c).

### 3. Is Conspiracy a Possible Claim?

[14, 15] Plaintiff alleges a conspiracy between Krakovitz and E.F. Hutton to violate RICO. The Court deals with this allegation briefly by noting that a corporation and its employees are not capable of a civil conspiracy. "[A] corporation and its employee do not constitute the 'two or more persons' required for a civil conspiracy. Other courts have also held that a conspiracy cannot exist involving only a corporation and its officers or employees." *Zelinger v. Uvalde Rock Asphalt Co.,* 316 F.2d 47, 52 (10th Cir.1963). *See Jagielski v. Package Machine Co.,* 489 F.Supp. 232, 233–34 (E.D.Pa.1980).

Consequently, plaintiff's claim for civil conspiracy under 18 U.S.C. §§ 1962(d), 1964(c) is dismissed as to both Krakovitz and E.F. Hutton.[20]

### Pendent Jurisdiction

Counts V—X are state law claims. Defendants seek dismissal of these counts on the assumption that Counts I—IV, the only bases of federal jurisdiction, will be dismissed. Since at least one of the earlier counts has survived defendants' motion to dismiss, pendent jurisdiction is still applicable as a proper basis of jurisdiction for the claims of Counts V—X.[21]

---

20. Defendants also challenge the entire RICO claim on the basis that it fails to comport with FED.R.CIV.P. 9(b). "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." *Id.* In view of plaintiff's incorporation by reference of all previous allegations into Count IV,

the claim does meet the requirements of Rule 9(b).

21. Defendants raise a specific objection to Count IX of the Complaint. Count IX alleges a claim under the Pennsylvania Securities Act, 70 P.S. §§ 1–401, 1–403, 1–501. The objection re-

news defendants' claim that there were no direct sales or purchases involved in the case. This contention was disposed of earlier in this opinion relative to plaintiff's claim under 15 U.S.C. § 77*l*(2). No further discussion of the matter is warranted here.