S. Robert WINER

v.

Peter PATTERSON.

Civ. No. 85–24–D.

United States District Court, D. New Hampshire.

Sept. 29, 1986.

Bingham, Dana & Gould by David C. Boch, Gerald F. Rath, Jody E. Forchheimer, Boston, Mass., McLane, Graf, Raulerson & Middleton by Wilbur Glahn, III, Manchester, N.H., for defendant.

## ORDER

DEVINE, Chief Judge.

In this action, plaintiff S. Robert Winer brings suit against his former stockbroker, defendant Peter Patterson, for violation of the Securities Exchange Act of 1934, 15 U.S.C. § 78j, Rule 10b–5, 17 C.F.R. § 240.-10b–5 (Count I); for violation of New Hampshire Revised Statutes Annotated ("RSA") 421–B (Count II); for violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961, *et seq.* (Count III); and for common law fraud (Count V).[1] Jurisdiction is founded upon 15 U.S.C. §§ 78j, 78aa, and 18 U.S.C. §§ 1964, 1965(a), as well as 28 U.S.C. §§ 1331, 1332(a)(1). Presently before the Court are defendant's motion for partial summary judgment or, in the alternative, for an order in limine regarding the proper measure of damages as to Count I and plaintiff's objection thereto, as well as defendant's motion to dismiss Count III and plaintiff's objection thereto.

*Proper Measure of Damages for Count I*

The gravamen of Count I is that defendant "churned" plaintiff's securities account by engaging in the purchase and sale of stocks which were excessive in light of the nature of the account and plaintiff's investment objectives. By letter dated June 10, 1986, defendant's counsel informed the Court that the parties' settlement discussions would be materially advanced if the Court could give guidance on the issue of the measure of damages available in a churning case. In response, the Court, by Order of June 18, 1986, indicated that it would entertain a motion for partial sum-

Winer, Pillsbury & Bennett by Peter W. Bennett, Nashua, N.H., Davis, Malm & D'Agostine by Robert C. Gerrard, Carol R. Cohen, Boston, Mass., for plaintiff.

---

1. Count IV, a claim for violation of RSA 358–A, was dismissed on January 7, 1986, pursuant to defendant's motion of December 9, 1985, to which plaintiff filed no objection. *See* Rule 11(d), Rules of the United States District Court for the District of New Hampshire.

mary judgment on the issue,[2] and counsel accordingly filed the pleadings detailed above. Defendant argues that if he is liable to plaintiff on the churning claim (a point defendant vigorously challenges), then plaintiff's recovery is limited to the excessive commissions *or* actual, out-of-pocket account losses; defendant claims plaintiff may not recover "lost profits" or both commissions *and* account losses which would also include commissions. In contrast, plaintiff, in his amended complaint, alleges he is entitled to recover all commissions paid to defendant, the loss of capital in his account (including commissions paid), and lost profits. The lost profit claim is sought on the theory that plaintiff's account would have followed the general upward trend in the stock market with an attendant profit had the account not been churned. Plaintiff proposes to measure this component of his damages by comparison of the performance of his account to that of the Dow Jones Industrial Average ("DJIA") for the relevant period. For the following reasons, the Court finds that plaintiff should be allowed to present testimony regarding his lost profits, and, accordingly, defendant's motion must be denied. However, as will be more fully discussed, plaintiff may not "double recover" the commissions paid under different theories, nor may he simply rely upon comparison with the performance of the DJIA to establish his lost profits.

The issue of the appropriate measure of damages in a churning action is one which has been troubling courts and commentators for many years and has led to varying and conflicting decisions. *See* Note, *Churning by Securities Dealers,* 80 Harv. L.Rev. 869, 883–85 (1967); Brodsky, *Measuring Damages in Churning and Suitability Cases,* 6 Sec.Reg.L.J. 157 (1978); Rath, *Damages in Broker/Customer Suits,* 15 Rev.Sec.Reg. 855 (1982); Annotation, *Stockbroker's Liability for Allegedly "Churning" or Engaging Customer's Account in Excessive Activity,* 35 A.L.R.3d 635 (1970). Section 28(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78bb(a), provides that recovery such as plaintiff seeks in Count I is limited to the plaintiff's "actual damages". Some courts have interpreted this as limiting damages in a churning action to excess commissions generated as a result of the overtrading. *See, e.g., Stevens v. Abbott, Proctor & Paine,* 288 F.Supp. 836 (D.Va.1968); *Hecht v. Harris, Upham & Co.,* 283 F.Supp. 417 (D.Cal. 1968). However, several courts have recognized that this limitation does not fully compensate the victimized investor who is harmed by the decline in value of his portfolio in addition to the excess commissions paid. *Hatrock v. Edward D. Jones & Co.,* 750 F.2d 767, 774 (9th Cir.1984); *McGinn v. Merrill Lynch, Pierce, Fenner & Smith,* 736 F.2d 1254, 1257 (8th Cir.1984); *Miley v. Oppenheimer & Co., Inc.,* 637 F.2d 318, 326 (5th Cir. Unit A Feb. 1981). The recoverable decline in portfolio value is "the difference between what [the plaintiff] would have had if the account ha[d] been handled legitimately and what he in fact had at the time the violation ended." *Hatrock v. Edward D. Jones & Co., supra,* 750 F.2d at 774, *citing Miley v. Oppenheimer, supra,* 637 F.2d at 327. While it is true that precise valuation of what an account would have been worth absent the churning is near impossible, "neither the difficulty of the task nor the guarantee of imprecision in results can be a basis for judicial abdication from the responsibility to set fair and reasonable damages in a case." *Miley v. Oppenheimer, supra,* 637 F.2d at 327.

■ The Court finds the analysis in *Miley v. Oppenheimer, supra,* and its progeny to be persuasive and accordingly holds that should churning liability be established, plaintiff is entitled to recover the difference between the value of his account after the churning and what its value

---

**2.** As defendant correctly points out in his brief, the Court actually indicated it would entertain *motions,* meaning cross-motions for partial summary judgment on the issue of the appropriate measure of damages in Count I. However, plaintiff's position is equally well presented in his objection to defendant's motion, and the difference in form is irrelevant.

would have been absent the violation. Given that this is the proper standard, the Court can conceive of no reason to exclude recovery of the profits plaintiff's account would have earned absent the churning, provided that plaintiff meets his burden of establishing that this would have occurred and in what amount. While the Court is aware that some uncertainties in establishing these damages are unavoidable, *see Miley v. Oppenheimer, supra,* 637 F.2d at 327, plaintiff will have to present testimony to support his claim that he has lost profits in the amount of "at least $21,952.00." Amended Complaint, ¶ 25. To this end, plaintiff must establish that comparison of the performance of his account to that of the DJIA would be an accurate measure of how his portfolio would have fared; the Court is not willing to blindly accept such a comparison as the proper method to measure lost profits.[3] Moreover, given that the Court finds that plaintiff is entitled to collect damages so as to put him in the position in which he would have been but for the alleged churning, there is no support for plaintiff's claim that he is entitled to twice recover the excess commissions paid.[4]

In summary, defendant's motion for partial summary judgment or, in the alternative, for an order in limine is denied. Plaintiff, if he proves liability as to Count I, should be "made whole,", i.e., put in the position in which he would have been absent the churning. Properly proven, this may well include lost profits, but it does not permit plaintiff to recover double the amount of excess commissions paid.

**3.** The Court notes that several of the cases and commentators acknowledge that the proper way to measure damages such as are here sought will vary depending on the types of securities held and the general market performance during the relevant time period. *See Hatrock v. Edward D. Jones & Co., supra,* 750 F.2d at 774; *Miley v. Oppenheimer, supra,* 637 F.2d at 328; Note, *supra,* 80 Harv.L.Rev. at 885.

**4.** Plaintiff argues this is appropriate under the holding of *Miley v. Oppenheimer, supra,* which broke down the two types of damages to make a

*Motion to Dismiss Count III*

Defendant moves to dismiss Count III (the RICO claim) of plaintiff's amended complaint on the basis that it fails to state a claim upon which relief can be granted. Rule 12(b)(6), Fed.R.Civ.P. In considering a motion to dismiss, the Court follows the established requirement that "the material facts alleged in the complaint are to be construed in the light most favorable to the plaintiff and taken as admitted, with dismissal to be ordered if the plaintiff is not entitled to relief under any set of facts he could prove." *Chasan v. Village District of Eastman,* 572 F.Supp. 578, 579 (D.N.H. 1983) *aff'd without opinion,* 745 F.2d 43 (1st Cir.1984) (citations omitted). In reviewing motions to dismiss, the Court's focus is limited to the allegations contained in the complaint itself. *Litton Industries v. Colon,* 587 F.2d 70, 74 (1st Cir.1978). The standard for granting a motion to dismiss is not the likelihood of success on the merits, but is whether plaintiff is entitled to offer evidence to support his claim. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974).

RICO makes illegal, *inter alia,* the conduct of the affairs of an interstate "enterprise" by a person employed by or associated with that "enterprise" through a "pattern of racketeering". 18 U.S.C. § 1962(c). "Racketeering activity" is defined as "any act which is indictable under any of the following provisions of title 18, United States Code ... section 1341 (relating to mail fraud), section 1343 (relating to wire fraud) ... or any offense involving ... fraud in the sale of securities ..., punishable under any law of the United States." 18 U.S.C. § 1961(1) In his motion to dis-

victimized investor whole as (1) excess commissions, and (2) excess portfolio decline. *Id.* at 326. However, it seems clear that the *Miley* court did not intend by this formula to permit a plaintiff to recover the excess commissions paid under both categories. Such an intention would be inconsistent with that court's statement that "the plaintiff is entitled to recover the difference between what he would have had if the account ha[d] been handled legitimately and what he in fact had at the time the violation ended." *Id.* at 327.

miss the RICO claim, defendant argues that: (1) plaintiff has not pleaded facts sufficient to show the required pattern of racketeering activity; and (2) plaintiff has not pleaded the existence of an "enterprise" separate and distinct from the person he accuses of racketeering activity. For the following reasons, the Court disagrees and accordingly denies defendant's motion to dismiss Count III.

■ Title 18 U.S.C. § 1961(5) provides that a "'pattern of racketeering activity' requires at least two acts of racketeering activity, one of which occurred after the effective date of this chapter and the last of which occurred within ten years (excluding any period of imprisonment) after the commission of a prior act of racketeering activity." Defendant argues that plaintiff has failed to allege two acts of racketeering activity in that "churning" is a unified offense, and thus plaintiff's claim that defendant made numerous excessive trades in his account in fact alleges only one racketeering activity. Neither party has cited any cases which decide whether a churning claim, by itself, sufficiently alleges a "pattern of racketeering activity,"[5] nor has the Court's research revealed any such precedent. However, it is not necessary to decide this issue, for, as plaintiff correctly argues, he has alleged that defendant committed wire fraud, Amended Complaint ¶ 32, in addition to securities fraud. Thus, plaintiff has alleged that defendant has committed two separate acts of racketeering activity as defined in 18 U.S.C. § 1961(1), and he accordingly has alleged a pattern of racketeering activity as defined by 18 U.S.C. § 1961(5). *See Nunes v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 609 F.Supp. 1055, 1064 (D.Md.1985).

■ Defendant next seeks to dismiss plaintiff's RICO claim on the basis that he has failed to allege an enterprise separate and distinct from the defendant. As was previously described, plaintiff seeks to assert RICO liability under the section which provides:

It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debts.

18 U.S.C. § 1962(c). It is the law in this Circuit, and in every other circuit but one, that the language of § 1962(c) requires that the "person" who engages in the pattern of racketeering activity be an entity distinct from the "enterprise". *See Schofield v. First Commodity Corp. of Boston,* 793 F.2d 28, 29–30 (1st Cir.1986) (collecting cases). Defendant claims that plaintiff has failed to plead such separate entities, requiring that his RICO claim be dismissed.

■ The Court disagrees. While plaintiff's amended complaint is not a model of clarity on this issue, it is apparent from paragraphs 7 and 34 that plaintiff alleges that defendant was the person, and the three brokerage firms by whom defendant was employed during the relevant time period were the enterprises. This is a common claim in RICO cases involving securities fraud. "Under the usual construction of section 1962(c), the brokers would be held liable if they conducted [the employer corporation's] affairs through a pattern of racketeering." *Id.* at 30. *See also Witt v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 602 F.Supp. 867, 868 (W.D.Pa.1985); *Yancoski v. E.F. Hutton Co., Inc.,* 581 F.Supp. 88, 97 (E.D.Pa.1983). Mindful that in ruling on a motion to dismiss "the material facts alleged in the complaint are to be construed in the light most favorable to the

---

5. Plaintiff cites several cases where other forms of securities fraud were alleged in addition to churning, *see, e.g., Rush v. Oppenheimer & Co.,* 628 F.Supp. 1188 (S.D.N.Y.1985); *Yancoski v. E.F. Hutton & Co., Inc.,* 581 F.Supp. 88 (E.D.Pa. 1983), making it impossible to determine whether these courts would find a churning claim, standing alone, to be an allegation of two or more racketeering activities. The one churning case defendant cites, *Sigvartsen v. Smith Barney Harris Upham & Co.,* No. 84–540, slip op. at 3 (M.D.Fla. May 31, 1985), does state that a churning allegation is only one racketeering activity, but this is dictum.

plaintiff," *Chasan v. Village District of Eastman, supra,* 572 F.Supp. at 579, the Court finds that plaintiff has adequately pleaded the separate entities of "person" and "enterprise" as § 1962(c) requires. Accordingly, defendant's motion to dismiss Count III must be denied.

### Conclusion

Defendant's motion for partial summary judgment or, in the alternative, for an order in limine (Document # 53) is denied; plaintiff may recover his "lost profits" on the churning claim consistent with the limitations described herein. Defendant's motion to dismiss plaintiff's RICO claim (Document # 42) is also denied.

SO ORDERED.