S. Robert WINER

v.

Peter PATTERSON.

Civ. No. 85–24–D.

United States District Court,
D. New Hampshire.

June 24, 1987.

Peter W. Bennett, Nashua, N.H., Robert C. Gerrard, Boston, Mass., for plaintiff.

David C. Boch, Boston, Mass., Wilbur Glahn III, Manchester, N.H., for defendant.

## ORDER

DEVINE, Chief Judge.

As this case nears trial,[1] defendant has moved the Court to reconsider that part of its prior order of September 29, 1986, that denied defendant's motion to dismiss Count III of plaintiff's amended complaint which alleges a claim under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961, *et seq. See Winer v. Patterson*, 644 F.Supp. 898, 901–02 (D.N.H.1986). Defendant cites the recent opinion from the First Circuit in *Roeder v. Alpha Industries*, 814 F.2d 22 (1st Cir.1987), as the basis for his claim that this Court should reconsider its prior order. Plaintiff objects to defendant's motion, and in a well-crafted memo explains why *Roeder* and various other cases decided in the interim do not support this Court's reversing its prior ruling on Count III. The Court has carefully reviewed all of the documents provided by both parties on this issue. Although this is a very close question, for the following reasons the Court finds that defendant's motion to reconsider must be granted.

■ The issue presented by the instant motion is whether plaintiff has pleaded facts sufficient to show the required "pattern of racketeering activity" necessary to prove a RICO violation. 18 U.S.C. § 1962(c). The statute defines "racketeering activity" as, *inter alia*, "any act which is indictable under any of the following provisions of title 18, United States Code: section 1341 (relating to mail fraud), sec-

---

1. Trial in this matter is presently scheduled for the two-week period commencing July 7, 1987.

tion 1343 (relating to wire fraud) ... or any offense involving ... fraud in the sale of securities ..., punishable under any law of the United States." 18 U.S.C. § 1961(1). Moreover, to establish a " 'pattern of racketeering activity' requires at least two acts of racketeering activity," within certain time limits not here relevant. 18 U.S.C. § 1961(5). In support of his motion to dismiss, defendant argued that plaintiff has failed to allege two acts of racketeering activity in that "churning" is a unified offense, and thus plaintiff's claim that defendant made numerous excessive trades in his account in fact alleges only one racketeering activity. Rather than venture into the difficult, previously undecided issue of whether a churning claim, by itself, sufficiently alleges a "pattern of racketeering activity," the Court relied on the fact that plaintiff alleges that defendant committed wire fraud in addition to securities fraud to find the two requisite racketeering acts, and thus denied defendant's motion to dismiss Count III on this basis. *Winer v. Patterson, supra,* 644 F.Supp. at 902.

However, as defendant points out in his motion to reconsider, the First Circuit's decision in *Roeder* casts serious doubt on the above-described rationale. In *Roeder,* an investor brought a securities fraud and RICO action against a corporation and its officers and directors, based on the corporation's alleged failure to disclose that it had paid a bribe to obtain certain subcontracts. In affirming the district court's granting of defendant's motion to dismiss the RICO claim, the appeals court found that the corporation's payment of the bribe was not a "pattern of racketeering activity" within the meaning of RICO, even though plaintiff alleged that the bribe was paid in three installments and that eleven phone calls (constituting wire fraud) and eight letters (constituting mail fraud) were exchanged among the defendants and the person they allegedly bribed in furtherance of the scheme. The court explained why the separate allegations of securities, mail, and wire fraud failed to satisfy the pattern requirement, as follows:

> A bribe, which by any realistic appraisal is solitary and isolated, is not trans-

formed into the threatening 'pattern of racketeering activity' with which Congress was concerned simply because the bribe is implemented in several steps and involves a number of acts of communication. *See Superior Oil Co. v. Fulmer,* 785 F.2d [252] at 257; *Eastern Corporate Fed. Credit Union v. Peat, Marwick, Mitchell & Co.,* 639 F.Supp. 1532, 1535 (D.Mass.1986). This is especially true when the acts involve mail and wire fraud. 'In today's integrated interstate economy, it is the rare transaction that does not somehow rely on extensive use of the mails or the telephone.' *Eastern Corporate Fed. Credit Union v. Peat, Marwick, Mitchell & Co.,* 639 F.Supp. at 1535.

*Roeder, supra,* 814 F.2d at 31.

Given the above language, this Court no longer feels it is appropriate to find that plaintiff has alleged a RICO "pattern of racketeering activity" simply on the basis that he claims defendant committed both securities and wire fraud, where the alleged wire fraud is defendant's telephonic communication to plaintiff of the stock transactions which constitute the alleged securities fraud. Thus, the Court must now address the issue that it dodged before: whether plaintiff's claim that defendant "churned" his brokerage account over a period of almost five years by excessively trading in it in order to generate commissions constitutes a "pattern of racketeering activity" within the meaning of RICO.

This analysis must begin with a discussion of the seminal Supreme Court case on the RICO "pattern" requirement, *Sedima, S.P.R.L. v. Imrex Co.,* 473 U.S. 479, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985) [hereinafter *"Sedima"*]. In the now-famous footnote 14, the Court said that the RICO definition of a pattern of racketeering activity which requires "at least two acts of racketeering activity," 18 U.S.C. § 1961(5), implies "that while two acts are necessary, they may not be sufficient." *Id.* 105 S.Ct. at 3285 n. 14. The legislative history of RICO, which was quoted by the Court in this discussion of the pattern requirement, provides guidance on what transforms indi-

vidual acts into a pattern of racketeering activity: "The target of [RICO] is thus not sporadic activity. The infiltration of legitimate business normally requires more than one 'racketeering activity' and the threat of continuing activity to be effective. It is this factor of *continuity plus relationship* which combines to produce a pattern." *Id.* (quoting S.Rep. No. 91–617, 91st Cong., 1st Sess. 158 (1969)) (emphasis added by the Court). The Court went on to add that lower courts concerned about the extension of civil RICO beyond the scope its enactors intended could halt this trend by developing a narrower, more meaningful concept of pattern. *Id.* at 3287.

Since *Sedima*, attempts to define what constitutes a RICO pattern have become, as one court has characterized it, a "cottage industry", *Morris v. Gilbert*, 649 F.Supp. 1491, 1502 (E.D.N.Y.1986). Several definite trends on this issue are developing in the various circuits. They all focus on the scenario at issue in the instant matter: whether a single scheme or episode can satisfy the "continuity plus relationship" test so as to produce a pattern of racketeering activity under RICO.

A few courts have continued to take an expansive view of the pattern requirement, finding that any two related acts of racketeering activity can constitute a pattern, even if the acts are committed in furtherance of a single criminal scheme. *See, e.g., Bank of America v. Touche Ross & Co.,* 782 F.2d 966, 971 (11th Cir.1986); *R.A.G.S. Couture, Inc. v. Hyatt,* 774 F.2d 1350, 1355 (5th Cir.1985). This approach has been criticized as ignoring the Supreme Court's language in *Sedima* to the effect that it is Congress's intent that RICO should reach only continuous criminal activity. *See, e.g., Roberts v. Smith Barney, Harris Upham & Co., Inc.,* 653 F.Supp. 406, 410–11 (D.Mass.1986).

At the other end of the spectrum, narrowly construing the pattern requirement, are the Fourth and Eighth Circuits, which have held that the pattern requirement is met only where a defendant's criminal acts are committed in furtherance of two or more separate criminal episodes or schemes. *See International Data Bank, Ltd. v. Zepkin,* 812 F.2d 149, 154–55 (4th Cir.1987); *Superior Oil Co. v. Fulmer,* 785 F.2d 252, 257 (8th Cir.1986). The problem with this approach, however, is that "defendants who commit a large and ongoing scheme, albeit a single scheme, would automatically escape RICO liability for their acts, an untenable result." *Morgan v. Bank of Waukegan,* 804 F.2d 970, 975 (7th Cir.1986).

In *Roeder,* the First Circuit joined the Seventh Circuit and several district courts[2] in taking a middle position between holding that any two acts may constitute a pattern and holding that a pattern requires acts in furtherance of multiple schemes.

We decline to adopt a definition of pattern that relies solely on whether activity can be classified as a single scheme or episode. Shifting the focus to such terms merely substitutes one set of definitional problems for another. Furthermore, given the indeterminate nature of the statutory language, and the subtleties inherent in looking for 'continuity plus relationship,' no one characteristic[ ] can be considered as controlling in determining whether a pattern exists. *Cf. Morgan v. Bank of Waukegan,* 804 F.2d at 975 (identifying several factors relevant to determining whether a pattern exists). In attempting to identify the order of magnitude at which acts constitute a pattern, the courts recognize that acts can be so closely interrelated in function and connected in time that the 'threat of [a] continuing activity' factor is absent. *See, e.g., Marks v. Forster,* 811 F.2d 1108 (7th Cir.1987).

*Roeder, supra,* 814 F.2d at 31. As was previously detailed, *Roeder* involved allegations of securities, wire, and mail fraud in furtherance of one bribery scheme, which was held not to establish a RICO pattern. In *Roberts, supra,* 653 F.Supp. 406, Judge Skinner of the District of Massachusetts presciently anticipated the First Circuit's holding in *Roeder* and employed the same "middle ground" approach in determining

---

**2.** *See Roberts, supra,* 653 F.Supp. at 411 (collecting cases).

whether an allegation of churning satisfied the RICO pattern requirement. As Judge Skinner said,

> this approach strikes an appropriate balance between RICO's role as a flexible tool for discouraging criminal activity and the danger of allowing it to reach sporadic and isolated criminal activities. It also avoids the use of conclusory labels and focuses the inquiry directly upon the question of what constitutes continuous criminal behavior. I conclude that the appropriate method for determining whether plaintiffs have alleged a pattern of racketeering activity is to focus on the specific factors evincing continuity of criminal activity.

*Id.* at 412. The factors Judge Skinner considered closely parallel those used by the Seventh Circuit in *Morgan, supra,* 804 F.2d at 975, cited by the First Circuit in *Roeder.* They are: (1) the number of independent victims of the alleged activity; (2) the number of participants in the alleged crime; (3) the purpose of the activity; (4) the result of the activity; (5) the method of commission; (6) the number of transactions; (7) whether the scheme is ongoing and open ended; and (8) the duration of the activity. As was the case in *Roberts,* the Court concludes that a consideration of these factors indicates that plaintiff has failed to allege a "pattern of racketeering activity."

Plaintiff is the only victim of the alleged scheme, and, although defendant worked for three different brokerage firms over the relevant time period, he was the sole participant in the scheme. "The purpose and result of the alleged activity was quite specific, to defraud [the plaintiff], and the alleged method of commission was at all times the same, the churning and manipulation of [his] ... account." *Roberts, supra,* 653 F.Supp. at 412. Moreover, while plaintiff alleges that defendant initiated some 200 transactions in his account over a nearly five-year period, and that each transaction constitutes securities fraud, it is important to remember that "[c]hurning is a unified offense which is identified only by an analysis of a broker's management of an account." *Shad v. Dean Witter Reynolds, Inc.,* 799 F.2d 525, 530 (9th Cir.

1986) (citation omitted). "[T]here is no single transaction, or limited, identifiable group of trades, which can be said to constitute churning." *Miley v. Oppenheimer & Co., Inc.,* 637 F.2d 318, 327 (5th Cir. Unit A, 1981). Finally, as was the case in *Roberts,*

> there are no allegations that this activity is likely to occur in other contexts or that it will continue to be a threat to society. Nothing in the complaint suggests that the defendant ... regularly engaged in criminal activities. The only factor that favors treating [defendant's] activities as a pattern is that the alleged activity continued for [fifty-eight] months. However, time alone does not transform [defendant's] acts into separate, continuous activities. *See Zahra* [*v. Charles* ], 639 F.Supp. [1405] at 1406–09 [ (E.D.Mich. 1986) ] (activities continuing for seven years not a pattern).

*Roberts, supra,* 653 F.Supp. at 412.

Plaintiff alleges that defendant committed "garden variety" securities fraud, a type of case which Congress did not intend that RICO reach. RICO is "not aimed at the isolated offender," *Sedima* 105 S.Ct. at 3285 n. 14 (quoting 116 Cong.Rec. 35193 (1970) (statement of Rep. Poff)), and plaintiff has failed to allege sufficiently a threat of continuing criminal activity on the part of defendant so as to satisfy the "pattern of racketeering activity" requirement.

In summary, for the reasons hereinabove stated, the Court finds and rules that defendant's motion to reconsider must be granted; that part of the prior Order of September 29, 1986, which denied defendant's motion to dismiss Count III of plaintiff's complaint is hereby vacated, and defendant's motion to dismiss said count is granted.

SO ORDERED.