**EASTERN CORPORATE FEDERAL
CREDIT UNION, Plaintiff,**

v.

**PEAT, MARWICK, MITCHELL & CO.,
et al., Defendants.**

Civ. A. No. 84–2056–T.

United States District Court,
D. Massachusetts.

July 30, 1986.

Robert J. Muldoon, Jr., Bryan G. Killian, Paul R. Gupta, Sherin & Lodgen, Boston, Mass., for plaintiff.

Robert E. Sullivan, Herrick & Smith, Boston, Mass., for defendant, Professional Asset; Ross A. Arbiter, Stan W. Levy, Weinberg, Zipser, Arbiter, Heller & Glick, Richards, Watson, Dreyfuss & Gershon, Erwin E. Adler, Los Angeles, Cal., and Gene A. Castleberry, Robert A. Wiener, Oklahoma City, Okl., of counsel.

Jessica Block, Arnold P. Messing, Margaret H. Marshall, Csaplar & Bok, Boston, Mass., for Peat, Marwick, Blanton, and York; William E. Hegarty, Mathias E. Mone, Edward P. Krugman, Cahill Gordon & Reindel, and Edwin D. Scott, Assoc. Gen. Counsel, Peat, Marwick, Mitchell & Co., New York City, of counsel.

## MEMORANDUM

TAURO, District Judge.

Plaintiff, a disappointed investor in the financially troubled Penn Square Bank ("Penn Square"), seeks damages from the defendant accountants who performed an audit of the bank. Plaintiff's complaint asserts federal RICO causes of action, as well as various state law claims.

In the latter part of 1981, defendant Peat, Marwick, Mitchell & Co. ("Peat Marwick") entered into an agreement with Penn Square to perform an independent audit of that bank's financial condition as of December 31, 1981. Peat Marwick issued a report of its audit on March 19, 1982. Plaintiff alleges that Peat Marwick fraudulently or recklessly prepared and certified the Penn Square financial statements, misrepresenting and concealing the bank's true financial condition.

Plaintiff claims that Professional Assets Management, Inc. ("PAM") received the Peat Marwick opinion and audited financial statements on or about April 16, 1982. Based on these documents, PAM began recommending investments in Penn Square certificates of deposit to its clients, including plaintiff. Relying on that advice, plaintiff began investing in short-term Penn Square certificates of deposit on May 25, 1982. On July 5, 1982, the Federal Deposit Insurance Corporation ("FDIC") closed Penn Square, because it had become unable to meet its obligations. As of that date, plaintiff held Penn Square certificates of deposit totaling over $4 million in value. Plaintiff suffered a loss of approximately $2.5 million in the value of its investments, as a result of Penn Square's failure.

Plaintiff has sued Peat Marwick and 17 of its partners under civil RICO, as well as related theories alleging negligence, unfair business practices, negligent misrepresentation, breach of fiduciary duty, and fraud. At issue now is defendant's motion to dismiss.

### I.

Plaintiff's only federal law causes of action arise under the Racketeer Influenced and Corrupt Organizations Act. Plaintiff has alleged violations of: 18 U.S.C. § 1962(c), prohibiting the conduct of, or participation in the conduct of, the affairs of an enterprise through a pattern of racketeering activity; § 1962(a), prohibiting the use of proceeds obtained through a pattern of racketeering activity to acquire, maintain, or control an enterprise; and § 1962(d), prohibiting conspiracy to do the above.

Defendants first contend that their activity does not meet the requirements of a "pattern of racketeering activity" under 18 U.S.C. § 1962(c).[1] Plaintiff has alleged that defendants committed multiple acts of wire and mail fraud in furtherance of a scheme to misrepresent the financial condition of Penn Square. Plaintiff lists, as predicate acts, the following: 1) Peat Marwick's mailing of the Penn Square 1981 Financial Statement and Peat Marwick unqualified audit opinion, 2) Peat Marwick's

---

**1.** 18 U.S.C. § 1962(c) provides:

It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or partic-

ipate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

mailing of its Management Report regarding the Penn Square audit engagement, and 3) Penn Square's telephone call to PAM relating the fact that Peat Marwick issued an unqualified audit report.

As a matter of statutory definition, a "pattern" must be established by "at least two acts of racketeering activity." 18 U.S.C. § 1961(5). Racketeering activity is defined to include "any·act which is indictable" under, among other sections, 18 U.S.C. §§ 1341 or 1343, relating to mail and wire fraud. Thus, under one interpretation of the statute, it is possible for a single fraudulent or criminal transaction, effected through two or more acts of mail or wire fraud, to satisfy the civil RICO requirement of a pattern of racketeering activity.

█ The legislative history of RICO makes clear, however, that Congress did not intend the statute to apply to isolated acts of fraud or criminal activity. "The concept of 'pattern' is essential to the operation of the statute.... The target of [RICO] is thus not sporadic activity." S.Rep. 91–617, 91st Cong., 1st Sess. 158. In applying civil RICO, therefore, it is essential to identify threats of continuing criminal activity, as opposed to isolated criminal events. It is particularly difficult to make that identification where the predicate acts alleged are those of wire or mail fraud. Multiple acts of wire or mail fraud are frequently required to implement "sporadic activity."

The Supreme Court has recently addressed the question of what constitutes a pattern of racketeering activity:

> ... The definition of a "pattern of racketeering activity" differs from other provisions in § 1961 in that it states that a pattern "*requires* at least two acts of racketeering activity," § 1962(5) (emphasis added), not that it "means" two such acts. The implication is that while two such acts are necessary, they might not be sufficient. Indeed, in common parlance two of anything do not generally form a "pattern." The legislative history supports the view that two isolated acts of racketeering activity do not constitute a pattern. As the Senate Report

explained: "The target of [RICO] is thus not sporadic activity. The infiltration of legitimate business normally requires more than one 'racketeering activity' and the threat of continuing activity to be effective. It is this factor of *continuity plus relationship* which combines to produce a pattern." S.Rep. No. 91–617, at 158 (1969) (emphasis added).

*Sedima, S.P.R.L. v. Imrex Co.,* —— U.S. ——, 105 S.Ct. 3275, 3285 n. 14, 87 L.Ed.2d 346, 53 U.S.L.W. 5034, 5038 n. 14 (1985). The Court noted that the "extraordinary uses" of civil RICO are primarily due to the breadth of the predicate offenses, "in particular the inclusion of wire, mail, and securities fraud," and to the "failure of Congress and the courts to develop a meaningful concept of 'pattern'." *Id.* 105 S.Ct. at 3285.

A number of lower courts have utilized this reasoning to distinguish repeated criminal activity from multiple acts used to carry out a single criminal transaction—particularly where the predicate acts alleged involve mail fraud, wire fraud, or securities fraud. *See, e.g., Superior Oil Co. v. Fulmer,* 785 F.2d 252, 257 (8th Cir. 1986) (conversion or theft of gas from pipeline, accomplished through several related acts of mail and wire fraud, was a single fraudulent scheme and failed to establish a pattern for purposes of RICO); *Allright Missouri Inc. v. Billeter,* 631 F.Supp. 1328 (E.D.Mo.1986) (multiple acts of wire fraud underlying alleged violations of federal securities laws, undertaken in connection with one real estate transfer, does not constitute a pattern under RICO); *Dunham v. Independence Bank of Chicago,* 629 F.Supp. 983 (N.D.Ill.1986) (repeated mailings of the same misleading statement, inducing a series of expenditures by the victim, is not a RICO pattern); *District Telecommunications Development Corp. v. District Cablevision, Inc.,* 638 F.Supp. 418 (D.D.C. November 27, 1985) (four mailings to a person other than plaintiff, as part of a single effort to defraud, is not a RICO pattern).

The reasoning behind this line of cases is evident and compelling. It defies logic to rule that a fraudulent securities scheme, perpetrated by a single mailing, is nothing more than garden-variety crime, but that the same scheme would have been a RICO violation if two or three mailings had been used. Such an approach would have the effect of including most fraudulent schemes under the RICO umbrella. In today's integrated interstate economy, it is the rare transaction that does not somehow rely on extensive use of the mails or the telephone.

Indeed, it is virtually impossible to imagine a case of securities fraud that would not involve two or more mailings or telephone calls. A ruling that one act of fraud, implemented by two or more mailings or telephone calls, constitutes a RICO "pattern of racketeering activity" would convert almost every securities case into a RICO claim, with attendant possibilities for triple damages. That was not the intent of Congress.

■ Rather, the provisions of RICO mandate that courts distinguish between a criminal episode, implemented through a number of acts of mail or wire fraud, and criminal conduct that is in the nature of a continuing activity. In addressing that responsibility, district courts have generally followed one of two approaches. Some have ruled that one fraudulent scheme, implemented through separate acts of mail or wire fraud, cannot be a pattern of racketeering activity. *See, e.g., Superior Oil Co. v. Fulmer,* 785 F.2d 252, 257 (8th Cir. 1986) (one scheme, involving multiple predicate acts, was not a pattern of racketeering activity); *Northern Trust Bank/O'Hare v. Inryco, Inc.,* 615 F.Supp. 828, 833 (N.D.Ill. 1985) (single alleged scheme of paying construction kickbacks, even if carried out through five mailings, did not form a pattern under RICO); *Fleet Management Systems v. Archer-Daniels-Midland Co.,* 627 F.Supp. 550 (C.D.Ill.1986) (scheme to illegally market a computer program, carried out through eight fraudulent acts over a two year period, was not a RICO pattern). In effect, these courts would require at least two fraudulent schemes to constitute a pattern.

Under the second approach, courts have accepted the premise that one scheme to defraud, implemented by acts of mail or wire fraud, may amount to a racketeering pattern. Even this approach, however, "requires some separation as well as relatedness" of the underlying acts of wire or mail fraud. *Mullin & Associates, Inc. v. Bassett,* 632 F.Supp. 532 (D.Del.1986); *see also Kredietbank, N.V. v. Joyce Morris, Inc.,* CA 84–1903 (D.N.J. January 9, 1986) [Available on WESTLAW, DCTU database]. Thus, in *Allington v. Carpenter,* 619 F.Supp. 474 (S.D.Cal.1985), plaintiffs alleged that five individual and five corporate defendants schemed to defraud plaintiff by falsely promising high rates of return on loans that were secured by worthless promissory notes or real estate trust deeds. Three acts of wire fraud were alleged in connection with this scheme. The court stated:

> Consistent with [the Congressional] intent to exclude single criminal events, a "pattern" of racketeering activity must include racketeering acts *sufficiently unconnected in time or substance* to warrant consideration as separate criminal episodes. The acts of wire fraud alleged in the complaint do not meet this standard. Each act was a part of the same criminal transaction.... Together the acts comprise a single criminal episode; they do not constitute a "pattern" of racketeering activity.

*Allington,* 619 F.Supp. at 478 (emphasis added).

■ This court is not prepared to rule that, as a matter of law, one scheme to defraud may not constitute a pattern of racketeering activity, no matter how many underlying acts of mail or wire fraud may be involved. There are single schemes to defraud that, because of their scope, duration, and separate and varied use of the mail or telephones, present the threat of continuing criminal activity. The standard adopted in *Bassett* and *Kredietbank,* permitting a finding of a pattern if one scheme to defraud is implemented through acts of mail or wire fraud substantially separated

in time or substance, meets the intent of Congress in enacting RICO.[2]

## II.

■ Applying that standard here, this court finds that the facts set forth by plaintiff amount to allegations of a single, isolated fraudulent episode, and do not meet the RICO requirement of a pattern. Defendants were involved in only one transaction, the single audit of Penn Square. There is no allegation that defendants were involved in any other fraudulent scheme.

Moreover, this is not a situation where, as a part of a single scheme to defraud, defendants committed acts of mail or wire fraud sufficiently separated in time or substance to create a pattern of racketeering activity. All three uses of mail and wire communication are alleged to have occurred between April 16 and May 25, 1982. Unlike *Bank of America*, defendant did not mail a series of fraudulent audit reports in order to implement a scheme. Rather, they performed only a single audit, the distribution of which was facilitated by the three predicate acts.

Judge Alley of the Western District of Oklahoma has previously considered the very same Peat Marwick audit of Penn Square, and Peat Marwick's use of the wires and mails in the course of performing that audit. He concluded that Peat Marwick's actions did not constitute a pattern of racketeering activity.

Many constituent actions were necessary to prepare the audit report, but it was a single, unified transaction. Viewed in the light most favorable to [the plaintiff], the complaint is insufficient.

. . . .

The "pattern" here alleged is Peat's "scheme … to disseminate false and misleading information regarding the condition of Penn Square Bank."—Assuming, arguendo, that such a "scheme" existed and that multiple wire or telephone communications were made in its furtherance, it remains apparent that any statements were merely constituents of a single, unified activity. This is not a situation where several distinct torts or crimes are committed over the course of an enterprise; here the court finds only a series of related statements that [the plaintiff] tries to splinter into the several elements of a civil RICO cause of action.

*Professional Assets Management, Inc. v. Penn Square Bank, N.A.,* 616 F.Supp. 1418, 1421, 1423 (D.C.Okl.1985). Judge Alley's conclusions are equally applicable here. Plaintiff's cause of action under § 1962(c) of RICO must be dismissed for failure to allege a "pattern of racketeering activity."

## III.

Defendants contend that plaintiff's claim under 18 U.S.C. § 1962(a)[3] must be dis-

---

**2.** This approach is consistent with many of the recent decisions finding that one scheme to defraud did satisfy the RICO requirement of a pattern. *See Illinois Department of Revenue v. Phillips,* 771 F.2d 312 (7th Cir.1985) (mailing of nine different fraudulent tax returns over a nine month period as part of a single scheme to defraud the Illinois Department of Revenue constituted a pattern of racketeering activity); *Alexander Grant & Co. v. Tiffany Industries, Inc.,* 770 F.2d 717 (8th Cir.1985) (48 acts of mail fraud and 10 acts of wire fraud, designed to advance one scheme to obtain a favorable audit, satisfied the RICO requirement of a pattern); *Bank of America National Trust & Savings Association v. Touche Ross & Co.,* 782 F.2d 966 (11th Cir.1986) (nine allegations of mail fraud covering a span of three years, and including the mailing of seven separate false financial statements and reports, in the perpetration of one scheme to defraud, constitutes a pattern for the purposes

of RICO); *but see R.A.G.S. Couture, Inc. v. Hyatt,* 774 F.2d 1350 (5th Cir.1985) (two acts of mail fraud, occurring five months apart, as part of a single scheme to defraud, constitutes a pattern); *Systems Research, Inc. v. Random,* 614 F.Supp. 494 (N.D.Ill.1985) (two or more uses of the mails or the wires in connection with one scheme to divert business from an employment counseling company established a pattern); *Conan Properties, Inc. v. Mattel, Inc.,* 619 F.Supp. 1167 (S.D.N.Y.1985) (two predicate acts of fraud, relating to one scheme to defraud, satisfy RICO).

**3.** 18 U.S.C. § 1962(a) provides in pertinent part:

It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity … to use or invest, directly or indirectly, any part of such income, or the proceeds of such

missed for failure to allege an injury stemming from the use or investment of racketeering income. Plaintiff does not contest the fact that it was injured by the underlying racketeering activity, rather than by the use or investment of the proceeds thereof. Plaintiff maintains, however, that it is sufficient, for purposes of § 1962(a), that defendant engaged in a pattern of racketeering activity, invested the proceeds thereof, and plaintiff was harmed as a result of defendant's conduct.

■ This court's determination that plaintiff failed to establish a pattern of racketeering activity defeats plaintiff's claim under § 1962(a). In addition, this court rules that § 1962(a) provides a cause of action only for injuries arising from the actual use or investment of racketeering income, and not for injuries arising from the underlying racketeering activity.

Focusing on the operative verbs, § 1962(a) makes it unlawful for a person to "use or invest" income derived through racketeering activity in the acquisition of an interest in an enterprise. The gravamen of the offense under § 1962(a) is not the racketeering activity itself, but the subsequent use and investment of the proceeds. Unlike § 1962(c), a pattern of racketeering activity alone does not establish an offense. 18 U.S.C. § 1964(c) provides a private right of action to persons injured "by reason of a violation of section 1962." [4] To state a claim under § 1964(c) for violation of § 1962(a), a plaintiff must allege that he or she "was injured by the violation there defined," which is the use or investment of income derived from racketeering. *DeMuro v. E.F. Hutton,* No. 85 Civ. 7097, slip op. at 8 (S.D.N.Y. January 13, 1986); *see also Gilbert v. Prudential-Bache Securities, Inc.,* CA 83–1513, slip op. at 4 (E.D.Pa. April 8, 1986) [Available on WESTLAW, DCTU database].

■ Because plaintiff's complaint fails to state a pattern of racketeering injury, and because it alleges an injury stemming directly from defendants' alleged racketeering activity, rather than from the use or investment of racketeering income, plaintiff's claim under § 1962(a) must be dismissed.

Plaintiff also attaches a claim under 18 U.S.C. § 1962(d), which prohibits conspiracy to violate § 1962(a) or (c). Because plaintiff's allegations of violations of § 1962(a) and (c) are insufficient, the § 1962(d) conspiracy claim must be dismissed.

### IV.

Defendants also move to dismiss plaintiff's state law claims, on the ground of lack of subject matter jurisdiction. The federal claims having been dismissed, plaintiff's state law claims can no longer be supported under a theory of pendent jurisdiction.

There is no independent ground for subject matter jurisdiction. Complete diversity between the parties is lacking. Plaintiff is incorporated in the state of Massachusetts. Defendant Peat Marwick is a partnership with partners in every state of the union, including Massachusetts. For purposes of diversity jurisdiction, a partnership is a citizen of every state of which one or more partners are members. *See United Steelworkers of America v. R.H. Bouligny, Inc.,* 382 U.S. 145, 150–51, 86 S.Ct. 272, 274–75, 15 L.Ed.2d 217 (1965); *Consumers Savings Bank v. Touche Ross & Co.,* 613 F.Supp. 249 (D.Mass.1985).

Plaintiff argues that this court has the discretion to dismiss only the non-diverse defendant, providing that it is not an indispensible party under Fed.R.Civ.P. 19. Plaintiff maintains that Peat Marwick is not an indispensible party, and that this

income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

**4.** 18 U.S.C. § 1964(c) provides:

Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court, and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee.

court should dismiss only Peat Marwick as a defendant, and retain the action against the individual defendants.

Without addressing the issue of whether Peat Marwick is an indispensible party, this court declines to adopt plaintiff's suggestion. This is not a situation where there has been a substantial dedication of judicial resources to a case. *See, e.g., Publicker Industries, Inc. v. Roman Ceramic Corp.,* 603 F.2d 1065 (3d Cir.1979) (following complete bench trial, district court had discretion to dismiss only non-diverse defendants and enter judgment as to the remaining parties). Plaintiff's state law claims are dismissed for lack of subject matter jurisdiction.