## Harris v. Omensky

*Lawrence S. Markowitz,* for plaintiff.
*Michael W. Babic,* for defendants.

PEREZOUS, *J.,* February 6, 1987 — Presently before the court are plaintiff, Rita J. Harris's, preliminary objections to the counterclaim of defendant, Burton Omensky.

Plaintiff is the holder of a $45,000 note signed by Edwin Harris and Bennett Omensky both individually and as officers of Atlantic Flite Center Inc. Defendant guaranteed the corporation's debts. On March 14, 1984, plaintiff sued defendant on these agreements.

The background of this case involves a series of transactions concerning the initial capitalization of the parties' children in a helicopter business. Defendant counterclaims for treble damages alleging plaintiff violated the Racketeer Influenced and Corrupt Practices Act (RICO). 18 U.S.C. §1961 et seq. Plaintiff's objections raise a question of jurisdiction and a demurrer.

Because we find the material facts set forth in defendant's pleading do not, and could not, state a cause of action under RICO, we shall assume concurrent jurisdiction. There is no disputing that the issue of state jurisdiction over a civil RICO claim is one of first impression in Pennsylvania, or that other jurisdictions are evenly split, or that the reasoning of each is persuasive, or finally, that a definitive appellate decision is not likely anytime soon. Compare *Maplewood Bank & Trust v. Acorn Inc.*, 504 A.2d 819, 820 (N.J. Super., 1985); *Levinson v. American Accident Reinsurance Group,* 503 A.2d 632 (Del. Ch., 1985) with *Cianci v. Superior Court of Contra Costa County,* 221 Cal. Rptr. 575, 583, 710, P.2d 375, 380 (1985). Rather than reiterate the many factors involved, the court will simply adopt the opinion of Justice Mosk in *Cianci,* supra.

Turning to the merits, paragraph 35 of the counterclaim alleges plaintiff "on two or more occasions since July 1982 . . . conducted and participated in the affairs of Atlantic Flite Center Inc. through a pattern of racketeering activity." The next paragraph more specifically avers:

"[Plaintiff] devised or intended to devise a scheme to defraud [defendant] into paying monies on the guaranty . . . [in] that in order to effect such a scheme or attempting to do so, [plaintiff] caused to be transmitted in interstate commerce by wire or placed in the United States mails false representations, promises or securities or caused to be disposed or distributed items of value relating to the helicopter held as security for the agreements. . . ." The last paragraph contains similar language except that it refers to items "of value relating to the certificate of deposit . . . ."

The first allegation is merely a conclusion of law and thereby improper pleading which may be ig-

nored. Goodrich-Amram §1019(a):12. The second two "may establish enough of a 'bare bones' scheme to defraud" under F.R.Civ.P. 9(b), but this court would at a minimum direct a more specific pleading under our state rules. See e.g., *Systems Research Inc. v. Random Inc.*, 614 F. Supp. 494, 498 (N.D. Ill., 1985). However, even were the court to color-in the material facts, we find that such a counterclaim would not provide the requisite "pattern of racketeering activities" and will therefore grant the demurrer.

In ruling on a demurrer:

"The question presented is whether on the facts averred, the law says with certainty that no recovery is possible. A demurrer admits every well pleaded material fact set forth in the complaint, as well as all inferences reasonably deductible therefrom, but not conclusions of law. The law does not provide a 'magic formula' to determine the sufficiency of a plaintiff's complaint, however, the law is clear a demurrer can only be sustained in the case free from doubt." (citations omitted). *Barantus v. Lis,* 332 Pa. Super. 48, 52-53, 480 A.2d 1178, 1180 (1984).

It is now clear that "[a] violation of section 1962(c) . . . requires (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Sedima, S.P.R.L. v. Imrex Co.,* 473 U.S. 479, 496 L.E. 2d 346, 358, 105 S.Ct. 3275 (1985). In a footnote, the *Sedima* court explained:

"The definition of a 'pattern of racketeering activity' differs from the other provisions in section 1961 in that it states that a pattern *'requires* at least two acts of racketeering activity,' section 1961(5) (emphasis added), not that it means two such acts. The implication is that while two acts are necessary, they may not be sufficient. Indeed, in common parlance two of anything do not generally form a 'pat-

tern.' The legislative history supports the view that two isolated acts of racketeering activity do not constitute a pattern. As the Senate report explained: 'The target of [RICO] is thus not sporadic activity. The infiltration of legitimate business normally requires more than one 'racketeering activity' and the threat of continuing activity to be effective. It is this factor *continuity plus relationship* which combines to produce pattern.' S. Rep. No. 91-617, p.158 (1969) (emphasis added)." *Sedima,* supra, at 358, n. 14. It has been noted "the above quoted *Sedima* language signals the courts . . . to place increased emphasis on certain competing strains of 'pattern' analysis." *Rush v. Oppenheimer & Co. Inc.,* 628 F. Supp. 1188, 1199 (S.D.N.Y. 1985).

In the present case, defendant guaranteed the debts of Atlantic Flite Inc., debts which were also secured by property of plaintiff. Apparently, business was unsuccessful and various items of collateral were sold or transferred to the secured creditor and plaintiff was left holding the instant $45,000 note. Assuming arguendo the transactions were *a scheme to defraud* defendant and that they were accomplished through a series of predicate acts constituting wire or mail fraud, they still do not amount to a "pattern of racketeering activity."

Instead, the court finds the alleged acts fit within the concept of only "one isolated fraudulent scheme" and there are many recent cases which have held such a scheme not to be "a pattern." See e.g., *Superior Oil Co. v. Fulmer,* 785 F.2d 252 (8th Cir., 1986); *Eastern Corporate Federal Credit Union v. Peat, Marwick, Mitchell & Co.,* 639 F. Supp. 1532 (D. Mass., 1986). By no stretch of the imagination could the present mail fraud — when, where, to whom or whatever its contents — be considered "sufficiently unconnected in time and substance to

warrant consideration as separate criminal episodes." *Eastern Corporate,* supra, at 1535 citing *Allington v. Carpenter,* 619 F. Supp. 474, 467 (S:D. Cal., 1985).

There was but one guarantee, and once executed, defendant was surely aware of the potential for his ultimate liability. Even ignoring the practical illogic of a plaintiff intentionally impairing her own collateral, "it is virtually impossible to imagine a case of [such] fraud that would not involved two or more mailings or telephone calls." *Eastern Credit,* supra. As was therein noted:

"The court is not prepared to rule that, as a matter of law, one scheme to defraud may not constitute a pattern of racketeering activity, no matter how many underlying acts of mail or wire fraud may be involved. There are single schemes to defraud that, because of their scope, duration and separate and varied use on the mail or telephones, present a threat of continuing criminal activity." *Eastern Credit,* supra. We hold only that there was no such "continuity plus relationship" on these facts.

Accordingly, we enter the following

### ORDER

And now, February 6, 1987, for the reasons stated in the attached opinion, the counterclaim of defendant Burton Omensky is dismissed.