**CORPORACION INSULAR DE SEGUROS, Plaintiff,**

v.

**Jose A. REYES MUNOZ, et al., Defendants.**

**Civ. No. 92–1651 HL.**

United States District Court, D. Puerto Rico.

June 3, 1993.

---

**601**

Danilo M. Eboli–Martinez, Goldman, Antonetti, Cordova & Axtmayer, San Juan, PR, Efren T. Irizarry–Colon, Arecibo, PR, Jose L. Gonzalez–Castaner, Hato Rey, PR, Robert G. Post, Miami, FL, for plaintiff.

Francisco M. Lopez–Romo, Old San Juan, PR, Dennis A. Simonpietri–Monefeld, Luis F. Abreu–Elias, Hato Rey, PR, Gregorio Lima, Bayamon, PR, David W. Roman, David Rive–Rivera, Ramon H. Vargas, Vargas & Rive, Erasmo A. Reyes–Pena, San Juan, PR, Luis R. Rivera–Rodriguez, Hato Rey, PR, Efren T. Irizarry–Colon, Arecibo, PR, for defendants.

Gretchen Lopez-de-Victoria, pro se.

## OPINION AND ORDER

LAFFITTE, District Judge.

### Background

This action was commenced by Corporacion Insular de Seguros ("CIS") to recover losses sustained as a result of the embezzlement of large sums of monies by members of its management acting in concert with various third parties.[1] CIS claims that it was

---

1. The Complaint names as defendants a number of former officials of CIS, their wives and conjugal societies and other persons:

a. Jose Reyes Munoz ("Reyes"), former President of CIS, his spouse, Carmen R. Marcano Sosa, and the conjugal partnership constituted by them. Carmen R. Marcano Sosa and the conjugal partnership are sued derivatively because they allegedly benefitted from Reyes' acts or omissions. The claims against Carmen R. Marcano Sosa in her individual capacity were dismissed. (*See,* docket ## 136 & 137). However, the Court recently vacated the judgment of dismissal and reinstated a claim for constructive trust against Marcano in her individual capacity. In a criminal prosecution arising from this alleged fraud, *United States v. Jose Reyes Munoz, et al.,* [Criminal No. 92–212(CC)], Reyes pled guilty to COUNT ONE of the indictment which charged him with Mail Fraud and Aiding and Abetting in the commission of the same, in violation of Title 18 U.S.C. Sections 1341 and 2.

b. Juan Santiago Gonzalez, former Vice President of Claims at CIS, his spouse, Elsa E. Gonzalez, and the conjugal partnership constituted by them. Elsa E. Gonzalez and the conjugal partnership are sued derivatively because they allegedly benefitted from Reyes' acts or omissions. The claims against Elsa Gonzalez in her individual capacity were dismissed. (*See,* docket ## 138 & 139). On December 4, 1992, all the claims against Santiago and his wife were voluntarily dismissed with prejudice. (*See,* docket # 178).

c. Morgan Rivera Perez ("Rivera"), former Vice President of Finance at CIS, his spouse, Ana Delia Merced Torres ("Torres"), and the conjugal partnership constituted by them. Torres and the conjugal partnership are sued derivatively because they allegedly benefitted from Rivera's acts or omissions. Torres is also sued individually. In a criminal prosecution arising from this alleged fraud, *United States v. Jose Reyes Munoz, et al.,* [Criminal No. 92–212(CC)], Rivera pled guilty to COUNT TWO of the indictment which charged him with Mail Fraud and Aiding and Abetting in the commission of the same, in violation of Title 18 U.S.C. Sections 1341 and 2.

d. Rafael Fuentes Fernandez ("Fuentes"), an attorney practicing in Guaynabo, Puerto Rico. In a criminal prosecution arising from this alleged fraud, *United States v. Jose Reyes Munoz, et al.,* [Criminal No. 92–212(CC)], Fuentes pled guilty to COUNT FOUR of the indictment which charged him with Mail Fraud and Aiding and Abetting in the commission of the same, in violation of Title 18 U.S.C. Sections 1341 and 2.

e. Fuentes & Fuentes, a law partnership conducting business in Guaynabo, Puerto Rico.

f. Gretchen Lopez de Victoria.

g. Gamalier Reyes.

h. Tropi–Car Enterprises Corp., a corporation organized under the laws of the State of Flori-

defrauded of more than 1.5 million dollars through a scheme which involved the submission, processing and payment of fraudulent insurance claims, the systematic destruction of records related to said claims and the illegal transportation, receipt and laundering of the proceeds of the said unlawful activity. COUNT I of the amended complaint alleges violations of Sections 1962(a), (c) and (d) of the Racketeer Influenced and Corrupt Organizations Act ("RICO") of the Organized Crime Control Act of 1970, as amended. 18 U.S.C. § 1965 *et seq.*[2] Under this count, defendants are alleged to have engaged in a pattern of racketeering activity consisting of violations of (1) 18 U.S.C. § 1341 relating to mail fraud; (2) 18 U.S.C. § 1343 relating to wire fraud; (3) 18 U.S.C. § 1956 relating to laundering of monetary instruments; (4) 18 U.S.C. § 1957 relating to engaging in monetary transactions in property derived from specific unlawful activity; and (5) 18 U.S.C. §§ 2314 and 2315 relating to the interstate transportation and receipt of fraudulently obtained monies. COUNTS II through VI state causes of action for conversion, unjust enrichment, breach of fiduciary duty, fraud and constructive trust.

Before the Court is a motion to dismiss filed by defendants Jose Reyes Munoz, Carmen R. Marcano Sosa and the conjugal partnership constituted by them and plaintiff's opposition thereto. (docket ## 126 and 182). Reyes' argues that the allegations contained in COUNT I of the complaint fail to state a claim for violation of RICO, that this case is nothing more than a simple fraud and breach of fiduciary duties case which should be adjudicated in the courts of the Commonwealth of Puerto Rico. Reyes contends that the complaint exhibits the following deficiencies, each warranting dismissal: a) the complaint ignores the "enterprise"/"person" distinction necessary to validly plead a violation of Section 1962(c); b) plaintiff has failed to demonstrate an "association in fact" enterprise as required by Section 1961(4); c) plaintiff has failed to satisfy the "interstate commerce element" of Section 1962; d) plaintiff has failed to adequately allege a RICO "pattern of racketeering activity"; e) the "pattern" requirement of RICO is unconstitutionally vague as applied to defendants; f) plaintiff has failed to plead with particularity the facts upon which it relies to allege fraud; g) plaintiff has failed to adequately allege a conspiracy to violate Section 1962(a) and (c). We address these arguments in turn.[3]

### Standard

We begin by setting out the well-rehearsed standard for motions to dismiss. "The

---

da of which defendant Reyes is president and defendant Carmen R. Marcano Sosa is an officer and stockholder.
i. Braulio Bermudez Sanchez, former Vice President of Administration at CIS, his spouse, Miriam J. Rodriguez, and the conjugal partnership constituted by them. Miriam J. Rodriguez and the conjugal partnership are sued derivatively because they allegedly benefitted from Bermudez' acts or omissions.
j. Francisco Milian Leon, former Vice President of Marketing at CIS, his spouse, Edyt Bello, and the conjugal partnership constituted by them. Edyt Bello and the conjugal partnership are sued derivatively because they allegedly benefitted from Milian's acts or omissions. CIS entered into a stipulation of settlement with these defendants wherein it released its claims against them. (*See,* docket # 162).

2. In relevant part, 18 U.S.C. § 1962 provides:

"(a) It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity or through collection of an unlawful debt ... to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce ...

"(b) It shall be unlawful for any person through a pattern of racketeering activity or through collection of an unlawful debt to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

"(c) It shall be unlawful for any person employed by or associated with any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

"(d) It shall be unlawful for any person to conspire to violate any of the provisions of subsections (a), (b), or (c) of this section."

3. The work of the Court in ruling on the issues presented by this motion was made substantially easier by the well-researched, articulate briefs presented by counsel for both parties.

Court's function on a Rule 12(b)(6) motion is not to weigh the evidence which might be presented at trial but merely to determine whether the complaint itself is legally sufficient." *Festa v. Local 3 International Brotherhood of Electrical Workers*, 905 F.2d 35, 37 (2d Cir.1990). Thus, "a complaint should not be dismissed or failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984); *Miranda v. Ponce Federal Bank*, 948 F.2d 41, 44 (1st Cir.1991). The court must accept as true the well-pleaded factual averments contained in the complaint, while at the same time drawing all reasonable inferences therefrom in favor of the plaintiff. *McDonald v. Santa Fe Trail Transp. Co.*, 427 U.S. 273, 276, 96 S.Ct. 2574, 2576–2577, 49 L.Ed.2d 493 (1976); *Correa–Martinez v. Arrillaga–Belendez*, 903 F.2d 49, 51 (1st Cir.1990). *But see, Correa–Martinez*, 903 F.2d at 52 ("[d]espite the highly deferential reading which we accord a litigant's complaint under Rule 12(b)(6), we need not credit bald assertions, periphrastic circumllocutions, unsubstantiated conclusions, or outright vituperation.").

### Discussion

### a. "Person"/"Enterprise" Distinction

■ It is beyond question "that under § 1962(c) the "person" alleged to be engaged in a racketeering activity (the defendant, that is) must be an entity distinct from the "enterprise;" under § 1962(c) the enterprise is not liable." *Odishelidze v. Aetna Life & Cas. Co.*, 853 F.2d 21, 23 (1st Cir.1988). Thus "[i]t is only a person, or one associated with an enterprise, not the enterprise itself, who can violate the provisions of the section." *Odishelidze*, 853 F.2d at 24. Reyes argues that the complaint names the defendants as "persons" and as an "enterprise" in violation of this well-established rule.

Having carefully examined the complaint, the Court must disagree. In *United States v. Perholtz*, 842 F.2d 343, 353 (D.C.Cir.1988), the D.C. Circuit faced the question of wheth-er an indictment which named Perholtz both as part of the enterprise and as a defendant ran afoul of the separateness requirement of section 1962(c). The Court noted that the indictment charged Perholtz with forming an "association-in-fact enterprise" with other individuals and corporations and alleged the Perholtz "participated in the conduct of the enterprise by his various actions in furtherance of its common objectives." *Id.* The court, thus, found that cases relied upon by Perholtz, *e.g.*, *Bennet v. United States Trust Co.*, 770 F.2d 308, 314–15 (2nd Cir.1985), *cert. denied*, 474 U.S. 1058, 106 S.Ct. 800, 88 L.Ed.2d 776 (1986), holding that a corporation cannot be both the enterprise and the defendant under section 1962(c) because it cannot associate with itself, were not controlling because "the indictment did not allege that Perholtz associated with himself, but that he associated with others." *Id.*

The situation before the Court is analogous. First, while the complaint does assert that defendants are "persons" who associated in fact to form an "enterprise," as in *Perholtz*, the cases relied upon by defendants are largely inapposite for they deal with situations in which a corporation (alleged to be the "enterprise") is also named as a defendant. *See e.g.*, *Miranda v. Ponce Federal Bank*, 948 F.2d at 44–45 (dismissing RICO claims against bank where individual officers and employees also sued); *Odishelidze v. Aetna Life & Cas. Co.*, 853 F.2d 21, 23 (1st Cir.1988) (dismissing Rico claims against insurance company and its subsidiaries where officers and employees also sued); *Schofield v. First Community Corporation of Boston*, 793 F.2d 28, 33 (1st Cir.1986) (dismissing RICO claims against commodities firm because firm could not be liable directly as enterprise or vicariously under principles of respondeat superior); *Arzuaga–Collazo v. Oriental Federal Savings Bank*, 913 F.2d 5 (1st Cir.1990) (Rico claims against bank and subsidiary dismissed because complaint did not charge that they were conducting some other unlawful enterprise beyond that alleged in the complaint). The present action differs from these cases in two significant respects: the amended complaint does not name the association or "enterprise" formed by Reyes and his alleged associates as a

defendant and it is not alleged that the "enterprise" is a legal entity, such as bank, insurance company or commodities firm. Second, as in *Perholtz,* the complaint does not allege that Reyes associated with himself, but that he associated with others. *Perholtz,* 842 F.2d at 353.. Accordingly, the court finds that plaintiff has not blurred the "person"/"enterprise" distinction in pleading their section 1962(c) claims.

**b. "Association-in-Fact Enterprise"**

■ The definition of "enterprise" contained in section 1961(4) establishes two basic categories of associations: legal entities and associations-in-fact. *United States v. Turkette,* 452 U.S. 576, 583, 101 S.Ct. 2524, 2528, 69 L.Ed.2d 246 (1981). In *Turkette,* the Supreme Court wrote:

> In order to secure a conviction under RICO, the Government must prove both the existence of an "enterprise" and the connected "pattern of racketeering activity." The enterprise is an entity, for present purposes a group of persons associated together for a common purpose of engaging in a course of conduct. The pattern of racketeering activity is, on the other hand, a series of criminal acts defined by statute. 18 U.S.C. § 1961(1) (1976 ed., Supp. III). **The former is proved by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit** [emphasis ours]. The latter is proved by evidence of the requisite number of acts of racketeering committed by the participants in the enterprise. While the proof used to establish these separate elements may in particular cases coalesce, proof of one does not necessarily establish the other. **The "enterprise" is not the "pattern of racketeering activity"; it is an entity separate and apart from the pattern of activity in which it engages** [emphasis ours].

*Turkette,* 452 U.S. at 583, 101 S.Ct. at 2528. The "ongoing organization" requirement is satisfied by showing "that some sort of structure exists within the group for the making of decisions, whether it be hierarchical or consensual." *United States v. Riccobene,* 709 F.2d 214, 222 (3rd Cir.1983). In other words,

"there must be some mechanism for controlling and directing the affairs of the group on an on-going, rather than an ad-hoc, basis." *Id.* . The second necessary element of an association-in-fact enterprise under RICO is that "the various associates function as a continuing unit." *Riccobene,* 709 F.2d at 223, *quoting, Turkette,* 452 U.S. at 583, 101 S.Ct. at 2528. Thus, "each person [must] perform a role in the group consistent with the organizational structure established by the first element and which furthers the activities of the organization." *Id.* The third and final element for an enterprise under RICO is that the organization must be "an entity separate and apart from the pattern of activity in which it engages." *Id.* at 223, *quoting, Turkette,* 452 U.S. at 583, 101 S.Ct. at 2528. Some courts have interpreted this requirement to mean that "plaintiff must plead specific facts which establish that the association exists for purposes other than simply to commit the predicate acts." *Elliott v. Foufas,* 867 F.2d 877, 881 (5th Cir.1989); *Rodriguez v. Banco Central,* 777 F.Supp. 1043, 1054 (D.P.R.1991) ("plaintiff ... must also prove the existence of the enterprise as a functioning unit with a structure apart from the mere coming together of the participants for purposes of committing the criminal predicate acts"). The Third Circuit, however, has expressed what appears to be a more forgiving view of this requirement:

> As we understand this last requirement, it is not necessary to show that the enterprise has some function wholly unrelated to the racketeering activity, but rather that it has an existence beyond that which is necessary merely to commit each of the acts charged as predicate offenses. The function of overseeing and coordinating the commission of several different predicate offenses and other activities on an on-going basis is adequate to satisfy the separate existence requirement.

*Riccobene,* 709 F.2d at 224.

Plaintiff contends that the first requirement in establishing an association-in-fact enterprise is satisfied by Paragraph 50 of the amended complaint, which reads in pertinent part:

The association in fact was an ongoing organization which had an organized framework for making decisions and for controlling and directing the affairs of the organization.

Plaintiff argues that the second requirement of continuity of structure "is established by the very nature of the fraud wherein three corporate insiders, including Reyes, during a two-year period of time, utilized various different intermediaries to channel the fraudulent insurance payments and then had said intermediaries "kickback" the funds to the insiders." Finally, relying on the *Riccobene* decision, plaintiff insists that the separate existence requirement is satisfied by the allegation that "[t]he association in fact also operated as a continuing unit and oversaw and coordinated the commission of various predicate offenses described herein and other activities on an on-going basis."

Although these allegations come quite close to asserting conclusions, they are not so plainly insufficient as to convince the Court that plaintiff can prove no set of facts in support of the enterprise element of his claim. Accordingly, Reyes motion to dismiss on the ground that plaintiff has not alleged an association-in-fact enterprise must be denied.

**c. "Interstate Commerce"**

■ To prevail on a RICO claim under section 1962, plaintiff must allege and prove that the "enterprise" engages in or that its activities affect interstate or international commerce. 18 U.S.C. § 1962. In determining what connections with interstate commerce must be proven to establish a violation of section 1962, "the courts have ruled that the impact need not be great." *United States v. Barton,* 647 F.2d 224, 233 (2d Cir. 1981); *United States v. Rone,* 598 F.2d 564, 573 (9th Cir.1979), *cert. denied,* 445 U.S. 946, 100 S.Ct. 1345, 63 L.Ed.2d 780 (1980); *United States v. Bagnariol,* 665 F.2d 877 (9th Cir.1981), *cert. denied,* 456 U.S. 962, 102 S.Ct. 2040, 72 L.Ed.2d 487 (1982); *R.A.G.S. Couture Inc. v. Hyatt,* 774 F.2d 1350, 1353

(5th Cir.1985) ("[t]he nexus with interstate commerce required by RICO is 'minimal' "). Furthermore, if an enterprise engages only in illegal activities, then these acts may provide the requisite nexus with interstate commerce. *R.A.G.S. Couture,* 774 F.2d at 1353; *Bunker Ramo Corp. v. United Business Forms, Inc.,* 713 F.2d 1272, 1289 (7th Cir. 1983) (nexus with interstate commerce requirement satisfied if enterprise affects interstate commerce through its racketeering activities); *Bagnariol,* 665 F.2d at 893 (interstate activities charged as predicate offenses for RICO violation may also be used to support the interstate connection of the enterprise); *State Farm Mut. Auto Ins. Co. v. Rosenfield,* 683 F.Supp. 106, 109 (E.D.Pa. 1988) (nexus may be demonstrated by proving that defendants used an instrumentality of interstate commerce to execute fraudulent scheme).

■ The Court believes that the amended complaint sufficiently alleges that the enterprise affected interstate commerce. The amended complaint alleges the existence of an enterprise that engaged in a pattern of racketeering activity and had an effect on interstate commerce. Furthermore, the amended complaint specifically alleges that defendants used the proceeds of their illegal activities to purchase a business in Tampa, Florida. Additionally, paragraphs 22, 23, and 34 contain allegations that instrumentalities of interstate commerce were used in connection with the enterprise's activities. The Court cannot say, at this stage, that CIS can prove no set of facts to show the enterprise affected interstate commerce, especially in light of the minimal criteria for finding such a nexus.

**d. "Pattern of Racketeering Activity"**

■ To prove a pattern of racketeering activity a plaintiff must show that the racketeering predicates are related, and that they amount to or pose a continued threat of criminal activity. *H.J. Inc. v. Northwestern Bell Telephone Co.,* 492 U.S. 229, 238–239, 109 S.Ct. 2893, 2900, 106 L.Ed.2d 195 (1989).[4]

---

**4.** As the Court noted in *H.J. Inc.,* 492 U.S. at 236–238, 109 S.Ct. at 2899, "the section of RICO headed "definitions," 18 U.S.C. § 1961, does not

so much define a pattern of racketeering activity as state a minimum necessary condition for the existence of such a pattern." *See also, Sedima,*

For analytic purposes, the court will discuss these constituent elements of RICO's pattern requirement separately.

### 1. *Relatedness*

"A plaintiff establishes that predicate acts are related by demonstrating that they 'have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events.'" *Fleet Credit Corp. v. Sion*, 893 F.2d 441, 445 (1st Cir.1990), *quoting, H.J. Inc.*, 492 U.S. at 240–241, 109 S.Ct. at 2901.

In the present case, the amended complaint alleges that several corporate insiders utilized their positions within CIS to prepare and issue checks payable to third parties for what appeared to be legitimate transactions. These checks were subsequently deposited into the bank accounts of various intermediaries and the proceeds were "kicked back" to the corporate insiders. The predicate acts which defendants allegedly engaged in to effectuate this scheme clearly had the same or similar purpose: to embezzle money from CIS; the same participants: Reyes, Rivera, Santiago, Fuentes etc.; the same victim: CIS; and similar methods of commission: the processing of fraudulent insurance claims and laundering of the proceeds therefrom. There is no doubt that plaintiff has properly pled the "relatedness" element of RICO's pattern requirement.

### 2. *Continuity*

"To establish continuity, a plaintiff must demonstrate that the related predicate acts 'amount to or pose a threat of continued criminal activity.'" *Fleet*, 893 F.2d at 446, *quoting, H.J. Inc.*, 492 U.S. at 240–241, 109 S.Ct. at 2901.

S.P.R.L. v. Imrex Co., 473 U.S. 479, 496, n. 14, 105 S.Ct. 3275, 3285, n. 14, 87 L.Ed.2d 346 (1985).

5. "Predicate acts pose a threat of continued criminal activity when they constitute 'past conduct that by its nature projects into the future with a threat of repetition'" *Fleet*, 893 F.2d at 447, *quoting, H.J. Inc.*, 492 U.S. at 242–243, 109 S.Ct. at 2902. Plaintiff may demonstrate such a threat by proving that "the related predicates

### i. "Amount to" Continued Criminal Activity

"Predicate acts "amount to" continued criminal activity when they form a closed period of repeated conduct," which the Court defined in *H.J. Inc.* as follows:

A party alleging a RICO violation may demonstrate continuity over a closed period by proving a series of related predicates extending over a substantial period of time. Predicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement: Congress was concerned in RICO with long-term criminal conduct.

*Fleet*, 893 F.2d at 446, *quoting, H.J. Inc.*, 492 U.S. at 242–243, 109 S.Ct. at 2902.[5]

Taking the factual averments of the amended complaint as true, plaintiff has satisfied this element of the pattern requirement by alleging a series of predicate acts which took place over a two year span of time. Within this period, plaintiff alleges ten separate instances of fraud, each involving multiple predicate acts. In *Bigay v. Taco Maker*, 730 F.Supp. 463 (D.P.R.1990), the court found such continuity lacking where the predicate acts were confined to a period of eight months. *See e.g., Eastern Corporate Fed. Cred. v. Peat Marwick, Etc.*, 639 F.Supp. 1532 (D.Mass.1986) (three acts of mail fraud over two month period do not establish continuity).

In *Roeder v. Alpha Industries, Inc.*, 814 F.2d 22 (1st Cir.1987), defendants exchanged eleven phone calls and eight letters in paying a bribe. The bribe was paid in three installments disguised as payments for a marketing study. The First Circuit found that all of the racketeering acts alleged related to a single instance of bribery, and thus did not constitute a "pattern" for purposes of RICO. The

themselves involve a distinct threat of long-term racketeering activity, either implicit or explicit," *H.J. Inc.*, 492 U.S. at 242–243, 109 S.Ct. at 2902; by showing "that the predicate acts are a regular way of conducting a defendant's ongoing legitimate business," *Id., see also, Fleet*, 893 F.2d at 447; or, by establishing that "the predicates can be attributed to a defendant operating as part of a long-term association that exists for criminal purposes." *H.J. Inc.*, 492 U.S. at 242–243, 109 S.Ct. at 2902.

Court wrote "[a] bribe, which by any realistic appraisal is solitary and isolated, is not transformed into the threatening "pattern of racketeering activity" with which Congress was concerned simply because the bribe is implemented in several steps and involves a number of acts of communication." *Roeder,* 814 F.2d at 31. In the present case, each separately pled instance of fraud is a completed transaction involving several predicates, equivalent to the single bribe in *Roeder.* In other words, according to the allegations of the amended complaint, each time defendants defrauded CIS certain procedures were followed for the reopening of dormant files, the issuance of the claim check, the destruction of records, the transferring of the check to an intermediary, the laundering of the proceeds and finally, the payment of the "kickback." Simply put, this case is not akin to *Roeder.*

Instead, this case bears a closer resemblance to *Blue Cross and Blue Shield of Michigan v. Kamin,* 876 F.2d 543 (6th Cir. 1989), which also involved the fraudulent processing of insurance claims. In *Blue Cross,* the Sixth Circuit reversed the trial judge's *sua sponte* dismissal of a RICO action for failure "to allege the 'continuity' necessary to state a claim under RICO." In dicta, the court wrote:

> [I]f the same person owns ten automobiles and fraudulently tries on ten different occasions to collect from the insurance company on each car, there would be ten schemes, not one, notwithstanding that the insurance company was the victim in each case and the modus operandi of the wrongdoer was the same in each case. Such facts would support a civil RICO claim.

*Blue Cross,* 876 F.2d at 545. The Sixth Circuit found that each false claim submitted to the plaintiff "involved a separate and distinct insured", "was complete and unto itself", and "did not rely or depend on any of the other claims." *Id.* These findings, combined with the fact that the claims were submitted over a protracted period of time led the court to the conclusion that a "pat-

tern" of racketeering activity had, in fact, been alleged. *Id.* The same conclusion is warranted here. In this case, a different closed file was reopened for each false claim. The processing of each claim was a complete transaction which did not depend or rely on the others. Moreover, the activity took place over a two year period. Thus, the Court finds that the amended complaint should not be dismissed for failure to allege a "pattern of racketeering activity." [6]

### e. Unconstitutional Vagueness RICO "Pattern" Requirement

 Defendants also challenge the complaint on the grounds that the "pattern" requirement as defined in 18 U.S.C. § 1961(5) and as employed in 18 U.S.C. § 1962 is "so vague that defendants were not and could not be on notice that their actions could have violated RICO. A "statute is not rendered unconstitutionally vague simply because potential uncertainty exists regarding the precise reach of the statute in marginal fact situations [not actually before the court]." *United States v. Angiulo,* 897 F.2d 1169, 1179 (1st Cir.1990); *United States v. Mazurie,* 419 U.S. 544, 550, 95 S.Ct. 710, 714, 42 L.Ed.2d 706 (1975). "Rather, in the absence of first amendment considerations, vagueness challenges must be examined in light of a case's particular facts." *Angiulo,* 897 F.2d at 1179. For defendants' vagueness challenge to prevail, they must show that "the meaning and scope of RICO's "pattern" element was unclear and vague as to their conduct at issue here." *Id.* In other words, defendants must demonstrate that persons of ordinary intelligence in their situation would not have had adequate notice that the offenses at issue here, namely, mail and wire fraud, laundering of monetary instruments, engaging in monetary transactions in property derived from unlawful activity and interstate transportation and receipt of fraudulently obtained monies constituted a "pattern of racketeering activity" under RICO. *Id.*

In *United States v. Dempsey,* 768 F.Supp. 1256, 1263 (N.D.Ill.1990), the district court found that there was nothing vague about the

---

6. Because the Court finds that plaintiff has adequately pled closed-end continuity, there is no need to reach defendants' argument that plaintiff failed to state a threat of continued criminal activity.

"pattern" requirement as applied to eleven commodities traders who over a two-and-a-half-year period committed more than 200 mail and wire fraud predicate acts in furtherance of a scheme to defraud their customers and avoid liability for trading errors.

If RICO's "pattern" requirement was not found constitutionally vague as applied to commodities brokers who defrauded their customers, certainly, here, a person of ordinary intelligence in Reyes' situation would have had adequate notice that the submission, processing and payment of fraudulent insurance claims, the systematic destruction of records relating to said claims and the illegal transportation, receipt and laundering of the proceeds of this unlawful activity constituted a "pattern of racketeering activity" for which liability under RICO might ensue. Moreover, the systematic submission of fraudulent insurance claims has previously been the subject of RICO cases. *See e.g., Blue Cross and Blue Shield of Michigan v. Kamin,* 876 F.2d 543 (6th Cir.1989); *State Farm Mutual Automobile Insurance Company v. Rosenfield,* 683 F.Supp. 106 (E.D.Pa. 1988); *The Aetna Casualty and Surety Company v. Rodco Autobody,* 138 F.R.D. 328 (D.Mass.1991).

Finally, the only case cited by defendants in which a constitutional challenge to the application of RICO's pattern requirement was upheld, *Firestone v. Galbreath,* 747 F.Supp. 1556 (S.D.Ohio 1990), is easily distinguishable from this case. In that case, the beneficiaries of an inter vivos trust sued various family members and business entities to recover assets that they claimed belonged in their grandmother's estate. The court found the dispute "far removed from the typical situations which Congress envisioned as being within RICO's scope of coverage." *Firestone,* 747 F.Supp. at 1581. As already mentioned, RICO has previously been used to recover losses sustained through insurance scams. In *Aetna,* 138 F.R.D. at 340, the court found that plaintiffs had demonstrated a reasonable likelihood of success on the merits in establishing the existence of a pattern of racketeering activity based upon defendants' submission of fraudulent insurance claims relating to vehicle collision damage.

Similarly, in *State Farm,* 683 F.Supp. at 110, the court found that a defendant's four acts of mail fraud over a two-year period against three insurance companies was sufficient to meet the statutory pattern requirement. At the very least, these cases demonstrate that, unlike the claims at issue in *Firestone, supra,* insurance scams are not beyond the reach of RICO. Thus, the Court finds that *Firestone* provides no support for defendants' position. Accordingly, we decline to dismiss the amended complaint on the ground that RICO's pattern requirement is unconstitutionally vague as applied to defendants.

**f. Rule 9(b) Fraud Pleading**

 Defendants also move the Court to dismiss this action on the grounds that the complaint fails to comply with the basic pleading requirements of Fed.R.Civ.P. 9(b). Rule 9(b) requires that "[i]n all averments of fraud ..., the circumstances constituting fraud shall be stated with particularity." The leading case in the First Circuit on how Rule 9(b) impacts on the pleading of RICO predicates is *New England Data Services, Inc. v. Becher,* 829 F.2d 286 (1st Cir.1987). There, the court began by determining that the degree of specificity required in pleading a RICO mail or wire fraud predicate is no more nor less than that which is required in general fraud and securities fraud cases. *Becher,* 829 F.2d at 290. In other words, "the pleader is required 'to go beyond a showing of fraud and state the time, place and content of the alleged mail and wire communications perpetrating that fraud.'" *Feinstein v. Resolution Trust Corporation,* 942 F.2d 34, 42 (1st Cir.1991), *quoting, Becher,* 829 F.2d at 291. However, the court concluded that in RICO mail and wire fraud cases, with respect to the details of when and where the mail or wires were used, dismissal should not follow automatically once the district court concludes the Rule 9(b) is not satisfied. *Id.* at 290. Instead, district courts are instructed to conduct a two-part test of "(1) whether Rule 9(b) was satisfied, and if not, (2) whether to allow discovery" and thereafter provide an opportunity to amend the defective complaint. *Id.* at 291. This inquiry is based on several specified factors, which the court should view "as a whole":

"the general scheme to defraud, the establishment of interstate commerce and the resulting implication of the use of interstate wires and mails, multiple defendants and whether the communications were between defendants solely or between the defendants and plaintiffs, which would affect the final factor of whether the facts were peculiarly within the defendants' control." *Id.* Additionally, district courts are directed to "keep in mind" the purposes of Rule 9(b), which are "(1) to place the defendants on notice and enable them to prepare meaningful responses; (2) to preclude the use of a groundless fraud claim as a pretext to discovering a wrong or as a "strike suit"; (3) to safeguard defendants from frivolous charges which might damage their reputations." *Id.* at 289.

The *Becher* court found that the complaint did not satisfy Rule 9(b) because the allegations of mail and wire fraud were conclusory and set forth no description of time, place or content. Thus, applying the above factors, the court found that plaintiffs had set out a general scheme to defraud and the probability of interstate communication and based on this finding, plaintiffs were afforded an opportunity to conduct further discovery.

Although the Court follows the analysis proscribed by the First Circuit, the facts of the case before us vary from those presented in *Becher* in certain important respects, compelling us to reach a slightly different result.

In this case, plaintiff has provided a significant amount of detail with regard to the various instances of fraud. CIS has alleged the date, payee and amount of each fraudulent check, the specific claim number each check was drawn on, the identities of the individuals who served as middlemen and received the improper payments. Plaintiff also argues that by virtue of the date that each fraudulent check was prepared defendants are put on notice as to the period of time when the fraudulent activity is alleged to have occurred. Thus, with respect to certain communications, the amended complaint does in fact allege time, place and content. (*See e.g.,* Amended Complaint ¶¶ 17, 22, 23, 34 [mail communications only] ). Other violations of the mail and wire fraud

statutes, 18 U.S.C. §§ 1341 and 1343, however, have not been pled with such specificity, a fact which plaintiff concedes but, nevertheless, attributes to the information being within the exclusive control of defendants. (*See e.g.,* Amended Complaint ¶¶ 18, 25, 28, 31, 38, 41 [mail communications] and ¶¶ 20, 23, 25, 28, 31, 38, 41 [wire communications] ). Nevertheless, with respect to this latter group of communications, plaintiff has pled other important details which should serve to put defendants on notice of the claims being asserted against them, such as the insurance claim and check numbers to which they relate, the amounts of these checks, names of persons involved and dates when the claim files were re-opened and the checks were prepared. With these facts in mind, the Court must balance the dictates of Rule 9(b), as interpreted by the First Circuit in *Becher,* with the reality of the present situation where, despite some of the formal lacunae of the complaint, defendants have, in all likelihood, received the information necessary to defend against this action, and in any case, are probably in possession of the information plaintiff needs to fill in those gaps.

Thus, applying the factors set forth in *Becher,* plaintiff has set forth with a relatively high degree of specificity the overall scheme to defraud, has established the element of interstate commerce with the resulting inference of use of interstate mails and wires, and has alleged that pertinent information related to these communications lies within the exclusive control of defendants. This latter assertion is supported by the fact that the case involves multiple defendants and communications which occurred between defendants solely and not with plaintiff. In Criminal Case No. 92–212(CC), defendants Reyes, Rivera and Fuentes pled guilty to mail fraud in connection with the alleged embezzlement of CIS funds, consequently, it cannot be said that this is a strike suit or groundless claim which might unfairly affect the defendants' reputations.[7] Similarly, as the Court has already noted, the amended complaint provides enough information relating to the ten instances of alleged fraud to

---

**7.** *See,* Note 1.

put defendants on notice and enable them to prepare a meaningful response. Thus, none of the harms to which Rule 9(b) is addressed are present here. Taken together, the over-all import of these factors is that the amended complaint, far from meriting dismissal, deserves, at the very least, an opportunity to be further amended after plaintiff flushes out more precise information relating to the mail and wire communications at issue through discovery. This, of course, was the solution reached by the *Becher* court. However, in *Becher,* the court had premised its conclusion on the additional finding that the complaint contained only conclusory allegations of mail and wire fraud which were devoid of particulars as to time, place, and content. This is not the case here. As previously mentioned, CIS has provided the requisite information with respect to certain mail fraud predicates. With regard to the mail and wire communications for which this information was not provided, other facts have been averred (namely, the insurance claim and check numbers to which the mail and wire predicates relate, the amounts of the checks issued, names of persons involved and dates when the claim files were re-opened and the checks were prepared), and these allegations, in the Court's opinion, serve to put defendants on notice and permit them to respond meaningfully without the need for further discovery and amendment of the complaint.

### g. "Conspiracy"

In *United States v. Winter,* 663 F.2d 1120, 1136 (1st Cir.1981), the First Circuit held that the necessary elements of a RICO conspiracy charge are (1) the existence of an enterprise, (2) that each defendant knowingly joined the enterprise and (3) that each defendant agreed to commit, or in fact committed, two or more specified predicate crimes as part of his participation in the enterprise. *See also, United States v. Angiulo,* 847 F.2d 956, 964 (1st Cir.1988), *cert. denied,* 488 U.S. 852, 109 S.Ct. 138, 102 L.Ed.2d 110, 488 U.S. 928, 109 S.Ct. 314, 102 L.Ed.2d 332 (1988). Thus, "alleging a conspiracy to violate RICO requires particularity for what can be best described analytically as two agreements: one to a pattern of racketeering activity as defined by the statute, and another to the statutorily proscribed conduct" *Frymire v. Peat, Marwick, Mitchell & Co.,* 657 F.Supp. 889, 896 (N.D.Ill.1987), *quoting, United States v. Neapolitan,* 791 F.2d 489, 498–499 (7th Cir.1986), *cert. denied,* 479 U.S. 940, 107 S.Ct. 422, 93 L.Ed.2d 372 (1986).

The amended complaint clearly alleges the existence of an enterprise, not only in paragraph 50, but also in paragraphs 15 through 45, where the details of ten instances of fraud spanning a two year period are set forth. Moreover, although the amended complaint does not specifically state that Reyes and the other defendants "knowingly" joined the enterprise, the Court fails to perceive how participation in the association-in-fact enterprise alleged at paragraphs 15 through 45 and 50 could be anything but "knowing." Finally, plaintiff has also alleged that Reyes and the other defendants agreed to commit, or actually committed, at least two predicate crimes. Accordingly, the Court finds that plaintiff has sufficiently alleged a conspiracy claim under 18 U.S.C. § 1962.

### *Conclusion*

Because the amended complaint adequately alleges the essential elements of a claim under 18 U.S.C. § 1962(a), (c) and (d), the motion to dismiss filed by defendants Jose Reyes Munoz, Carmen R. Marcano Sosa and the conjugal partnership constituted by them is hereby **denied.**

**IT IS SO ORDERED.**